0MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 100
Docket:        Som-15-16
Submitted
 On Briefs:    July 1, 2015
Decided:       August 4, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

IN RE I.S.

PER CURIAM

[¶1]  The father of I.S. appeals from a judgment entered by the District Court (Skowhegan, *Fowle, J.*) terminating his parental rights pursuant to 22 M.R.S. § 4055 (2014).  The father contends that the court violated his equal protection or due process rights by allegedly (1) improperly terminating his parental rights on the basis of his borderline personality disorder diagnosis, (2) placing a burden of proof upon him, and/or (3) failing to provide him with a reasonable period of time for reunification.[1]  After careful review of the record, we affirm.

---

[1]  The father also contends that the court erred by admitting a letter from a Department employee to the father in violation of the rule against hearsay, *see* M.R. Evid. 802, and that this admission violated his due process rights by "essentially lower[ing]" the standard of proof.  The letter was not offered for the truth of any statements.  Rather, it was admitted as relevant to the father's complaints regarding the Department's alleged delays in providing him services.  Other evidence was admitted to prove the contents of the Department employee's statement contained in the letter.  Accordingly, the letter was properly admitted at trial.  The father has cited no authority for his argument that the standard of proof was lowered by admission of the letter, and the record reassures us that the trial court applied the proper standard of proof in this case.

## I. CASE HISTORY AND COURT FINDINGS

[¶2]   The child was removed from her mother's care at birth, in November 2012, because the child had serious health issues and her mother was unable to care for her.  The father was identified as the child's biological parent nearly a year later in early October 2013.

[¶3]  With the father's agreement, the court (*Mullen, J.*) entered a jeopardy order in January 2014, finding jeopardy based upon the father's "history of significant mental health concerns that have not always been appropriately managed," including suicidal and homicidal ideations and self-injurious behaviors, which were often precipitated by stress.  The court found that caring for the child would be stressful due to her medical needs and that the father "ha[d] not demonstrated appropriate, healthy coping skills for managing stress."

[¶4]  In June 2014, the Department of Health and Human Services filed a petition to terminate the father's parental rights, and a two-day hearing was held in late September 2014.  The Department continued to provide reunification services up until the time of the hearing.  After the hearing, the court (*Fowle, J.*) terminated the father's parental rights upon finding that he is (1) unable to take responsibility for the child within a time reasonably calculated to meet her needs, and (2) unable to protect the child from jeopardy, and that this is unlikely to change within a time reasonably calculated to meet the child's needs.  *See id.* § 4055(1)(B)(2)(b)(i), (ii).

The court also found that termination is in the child's best interest. *See id.* § 4055(1)(B)(2)(a).

[¶5] In its judgment, the court made the following findings, which are supported by evidence in the record. The father "has been in and out of treatment for his whole life," has attempted suicide multiple times, has engaged in self-harming behaviors including cutting and burning himself, and reports chronic suicidal ideation. He "has a history of rage episodes," and, at a psychiatric session in June 2013, he told the doctor that he was "on the verge of snapping and that he did not want to take a shotgun and 'kill [his family].'" The father has reported having thoughts and dreams of killing, dismembering, mutilating, and/or raping women. At times he denies that he would ever act on these thoughts, and other times he "does not know if he will act on them."

[¶6] The risk that the father will harm himself or others is lower when he has fewer responsibilities and increases as "the stress of daily living is added to [his] life." Being the sole caretaker for the child, who has many medical needs, would cause his stress to increase. The father does not have the ability to "meet the developmental and special needs of his child." "Even with a strong motivation to change and a strong commitment to change, it is still likely to take several years for [the father] . . . to be able to parent a medically fragile child." The father's

4

"mental health is likely to remain unstable for the foreseeable future," and "the prognosis for significant change on [his] part is poor."

[¶7]  The child "has significant medical issues and disabilities" and, since birth, has required a feeding tube that is inserted into her stomach through a "port" in her upper chest.  The close monitoring and maintenance of this process is difficult and important to the child's health and safety.  The child "requires occupational therapy and physical therapy, two to three times each month," due to mobility difficulties with her thumbs, ankles, and feet.  She is expected to have surgery in Boston to address her thumbs, which are presently "useless."  "[The child] is thriving in her current home . . . , where she has been since January 2013."  Her foster parents "have loved her, nourished her, and assisted her with fairly complex home medical procedures."  They are willing to adopt her.

## II.  LEGAL ANALYSIS

[¶8]  Contrary to the father's contentions, there is not even a suggestion in the record that the court terminated his parental rights solely because he has been diagnosed as having a borderline personality disorder.  The court did not mention this diagnosis in its judgment.  The father's argument on appeal is predicated upon his contention that there was no evidence tying his mental health conditions to his actual ability to parent the child.  However, the court made findings, supported by

competent evidence, that the father's mental health problems would significantly affect his ability to parent this child.

[¶9]   In addition, the father has not demonstrated that he was treated differently than other parents who are similarly, demonstrably unfit to parent their children.   Thus, the father has not carried his burden to meet the threshold requirement of his equal protection challenge.  *See State v. Bennett*, 2015 ME 46, ¶¶ 17-18, 114 A.3d 994.

[¶10]  Further, the father was provided with the due process required in the context of a termination of parental rights.  *See In re A.M.*, 2012 ME 118, ¶ 16, 55 A.3d 463.  Although the timeframe for attempted reunification with the child was affected by the delay in his identification as the child's father, throughout the months when the Department offered services to him and visits with the child, the father's cooperation was inconsistent.   The court appropriately considered the interests at stake when it determined that the father would not be able to take responsibility for the child and protect her from jeopardy within a time reasonably calculated to meet her needs.   *See*  22 M.R.S. §§ 4003(4), 4050, 4052(2-A)(A) (2014); *In re Jamara R.*, 2005 ME 45, ¶ 22, 870 A.2d 112.  Further, there is no indication that the court shifted the burden of proof to the father to prove he was a fit parent, as the court made reference to the Department's burden of proof and

6

made subsequent findings by clear and convincing evidence. *See* 22 M.R.S. § 4055(B)(2); *In re Scott S.*, 2001 ME 114, ¶ 14, 775 A.2d 1144.

[¶11]   Finally, contrary to the father's contentions, there is clear and convincing evidence in the record to support the court's finding of at least one ground of parental unfitness, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), and that termination was in the child's best interest, *see id.* § 4055(1)(B)(2)(a).  The father's reliance on *In re Jazmine L.*, 2004 ME 125, ¶¶ 18-22, 861 A.2d 1277, is misplaced. Here, the court did connect its findings regarding the father's parenting deficits to the child's needs.  Further, to the extent the father argues that the court relied on questionable evidence, it was within the court's province, as fact-finder, to determine the weight and credibility to be afforded to evidence.  *See In re Kayla M.*, 2001 ME 166, ¶ 6, 785 A.2d 330.

The entry is:

Judgment affirmed.

**On the briefs:**

Aaron B. Rowden, Esq., and Jared S. Brewer, Esq., Schneider & Brewer Attorneys at Law, Waterville, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Skowhegan District Court docket number PC-2012-43
FOR CLERK REFERENCE ONLY