MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 2
Docket:       Pis-15-259
Submitted
 On Briefs:   November 19, 2015
Decided:      January 12, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

IN RE G.T. et al.


SAUFLEY, C.J.

[¶1] The two boys who are the subject of this termination of parental rights proceeding were ten and twelve years old when the court (Dover-Foxcroft, *Mallonee, J.*) held a hearing on the third petition brought by the Department of Health and Human Services to terminate the parental rights of their parents. Two prior petitions had been denied, allowing their parents multiple opportunities to learn how to parent their sons free from violence, hostility, and denigration. By the time of the third trial, both boys suffered from post-traumatic stress disorder and other serious conditions, and they faced a life limited by their lost opportunity for a healthy childhood. Their parents appeal from the termination of their parental rights, challenging the court's findings of parental unfitness and its determination

2

that termination was in each child's best interest.[1] We discern no error or abuse of discretion and affirm the judgment.

## I. BACKGROUND

[¶2] This family became involved in a child protection proceeding in 2003, when G.T. was less than a year old, due to the father's domestic violence and mental health issues, and the mother's neglect. The Department eventually petitioned for the termination of the parents' parental rights, but the court (*MacMichael, J.*) determined in April 2005 that a termination of parental rights was not in G.T.'s best interest. The court clarified, however, that the father had a responsibility to "understand once and for all that he cannot continue his pattern of domestic violence and denial," that he must not behave in an abusive manner, and that he must "do more than pay lip service to what the service providers have been trying to teach him." Later in 2005, J.T. was born and was immediately placed in the Department's custody.

[¶3] The court considered a subsequent petition for termination of parental rights, entering a judgment in May 2006. The court found that the father had

---

[1] The mother also argues that, due to an intellectual disability, the termination of her parental rights violates due process or disabilities law. We do not reach this issue, however, because the court did not make any finding that the mother was intellectually disabled, and based its judgment on her chronic failure to protect the children from mistreatment and support them in recovering from the abuse they have suffered. The mother did not request additional findings after the court entered its judgment, *see* M.R. Civ. P. 52(b), and we cannot assume that the court found that the mother was disabled.

physically disciplined an older child from another relationship in December 2005 by grabbing the front of the child's jacket and his neck, and that the father had continued to be unable "to conduct himself in a manner that demonstrates alternatives to hurtful behavior." The court found that, although the father had demonstrated some willingness to participate in services, he had "not demonstrated an ability to use what he ha[d] been taught." The court found that he had spoken in a "loud, angry, and threatening manner" at a meeting held to review a treatment plan, that he had "used derogatory terms to describe the women professionals involved in this case and to describe other women in his life," and that he had continued "to fail to accept accountability for his actions."

[¶4] Nonetheless, the court found that the father had a good relationship with G.T. and determined that the Department had not met its burden to demonstrate the father's unfitness. The court ordered the Department to provide intensive in-home support for the father, and the boys were returned to their father's home later in 2006. The mother has lived apart from them, except during the children's early lives.

[¶5] The present matter began on November 15, 2013, after G.T. disclosed at school that his father had physically abused him and his brother, and had

4

threatened his life.[2] The court (*Cuddy, J.*) granted the Department's petition for an order of preliminary protection requiring the removal the children from the father's home and their placement in the Department's custody. Services were again provided to the father to help him recognize the effect of his abuse on the children and become capable of caring for them as they recover from that abuse.

[¶6] After a contested summary preliminary hearing as to the father,[3] the court (*Stitham, J.*) found that the father had physically and emotionally abused each of the children. This finding was also reached in a jeopardy order entered with both parents' consent. A contested judicial review led to additional findings by the court (*Mallonee, J.*) that the father had physically accosted G.T. at an October 8, 2014, visit and threatened G.T. that he would surrender his parental rights to him; had continued to be combative toward the Department, blaming the Department for G.T.'s behavioral issues; and had been hostile in the courtroom.

[¶7] The Department petitioned for termination of the parents' parental rights on February 4, 2015. The court held a hearing on the petition two months later and entered a judgment terminating both parents' parental rights to the boys on May 19, 2015. The court found that, despite the father's participation in

---

[2] The Department's petition for a child protection order and request for an order of preliminary protection alleged that the mother was unable to protect the children from the father's abuse and was not capable of caring for them independently due to cognitive limitations.

[3] The mother waived the right to a summary preliminary hearing.

services, he continues to relate to others primarily based on anger, fear, and intimidation, including in the courtroom, and he perceives as hostile anyone who does not unambiguously appear to him to be an ally. The court found that the father is unable to protect the boys from jeopardy because he cannot change his mode of interpersonal relations and behavior to prevent aggravating the children's distress. The court found that the children's mother does not believe she is able to care for the children, that she has never been able to protect G.T. from mistreatment, and that she is unable to assist the boys in recovering from their trauma.

[¶8] The court further found that both children suffer from post-traumatic stress disorder as a result of their father's hostile and violent behavior; that G.T.'s severe needs led to his placement in a residential treatment program after multiple failed placements; and that J.T., who has lived with his paternal aunt throughout the proceedings, has developmental delays. Both children have been involved in child protection proceedings during much of their lives, and as the court found, they now desperately need safety, stability, and clarity about their futures—goals that are actively undermined by the possibility of a return to either parent's care.

[¶9] Ultimately, the court found that both parents were unable to protect the children from jeopardy and that the circumstances were unlikely to change within a time that is reasonably calculated to meet either child's needs, 22 M.R.S.

§ 4055(1)(B)(2)(b)(i) (2015), and it determined that, despite the children's affection for their parents, their best interests are served by being freed from these parental attachments to achieve permanency, *see* 22 M.R.S. § 4055(1)(B)(2)(a) (2015). The parents appealed from the court's judgment.

## II. DISCUSSION

[¶10] For a court to terminate parental rights after custody has been removed from a parent upon a finding of jeopardy, *see* 22 M.R.S. §§ 4035, 4055(1)(A)(1)(a) (2015), the court must find, by clear and convincing evidence, at least one ground of parental unfitness, *see* 22 M.R.S. § 4055(1)(B)(2)(b) (2015), and that termination was in the child's best interest, *see* 22 M.R.S. § 4055(1)(B)(2)(a). *See In re I.S.*, 2015 ME 100, ¶ 11, 121 A.3d 105. We review the entire record to determine whether it "demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination." *In re B.P.*, 2015 ME 139, ¶ 16, --- A.3d --- (quotation marks omitted). "Evidence is clear and convincing when the court could reasonably have been persuaded that the required factual findings were proved to be highly probable." *Id.* (quotation marks omitted).

A.    Unfitness

[¶11]   The evidentiary record amply supports the court's finding that, although the father was afforded services to assist him in becoming able to care for his children both during the prior child protection matter and during these proceedings, he has been unable to curtail his hostile, aggressive, and violent behavior toward his family and others.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i); *In re B.P.*, 2015 ME 139, ¶¶ 3, 10, 19, --- A.3d ---.   Specifically, the court heard testimony that the father continues to blame the Department for what he perceives as a conspiracy against him, continues to behave in a controlling way toward the children's mother, and continues to deny that any issues need to be addressed.  The father has been diagnosed, through a court ordered diagnostic evaluation, with a personality disorder not otherwise specified with borderline and narcissistic features based on symptoms including a reactive mood; inappropriate and intense anger that the father has difficulty controlling; stress-related paranoid ideation; a lack of empathy; a tendency to exploit others; and arrogant, haughty behaviors and attitudes.  Given the father's longstanding inability to make use of the years of services provided to him to change his aggressive and controlling patterns of behavior, and the tragic evidence of the serious detrimental effect his conduct has had on his children's healthy development, the court did not err in finding that the father is unable to protect the children from jeopardy and that these circumstances

are unlikely to change within a time reasonably calculated to meet the children's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i); *In re Thomas H.*, 2005 ME 123, ¶¶ 9, 20-21, 889 A.2d 297.

[¶12] The court's finding of the mother's unfitness is supported by her testimony that the children could not live with her at her existing residence and that they should instead be reunified with their father. Despite the father's extensive history of abuse against the mother and these children—some of which the mother disclosed to others—the mother in her testimony denied that the father had ever abused the children or her. The court did not err in finding that the mother does not believe she can care for the boys on her own or in finding that she cannot protect the boys from their father or help them recover from the abuse they have suffered in time to meet the boys' needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i); *In re Thomas H.*, 2005 ME 123, ¶¶ 9, 20-21, 889 A.2d 297.

B.    Best Interests of the Children

[¶13] The court determined that the children were severely troubled by the lack of permanency in their living situations. *See* 22 M.R.S. § 4003(4) (2015); *In re B.P.*, 2015 ME 139, ¶ 19, --- A.3d ---; *see also In re Thomas H.*, 2005 ME 123, ¶¶ 23-30, 889 A.2d 297 (discussing the importance of permanency). The court's finding is supported by evidence that J.T. is agitated and prone to violence, that he is anxious and has difficulty regulating his emotions, and that although he wants to

return to his father's home and misses his father, he does not think it would be safe and fears that he will be abused again.

[¶14] The evidence similarly supports the court's finding that the father's aggressive conduct hindering reunification negatively affected G.T. Specifically, G.T. was worried, after his father accosted him during a visit at his residential placement, that his father would never be ready to care for him in his home. The testimony of G.T. and several other witnesses makes painfully clear that G.T. wants to live with his father but fears being abused or disappointed, and that waiting for a final determination has left G.T. anxious and is causing him further harm.

[¶15] The court did not err in finding that, without termination, the children would continue to suffer based on a false hope of reunification with parents whose intractable patterns of conduct prevent them from providing the safety, security, and permanence that the children demonstrably require. The boys have been subjected to persistent violence and have been parented by a father whose method of relating to adults—particularly women—is hostile, violent, controlling, and entirely dysfunctional. The father has proved unable to change his aggressive behavior, and the mother cannot protect the children from their father. The court's determination that termination of the parents' parental rights is in each child's best

interest is supported by evidence in the record and was well within the court's discretion.  *See In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297.

The entry is:

Judgment affirmed.

**On the briefs:**

Kimberly C. Cavanagh, Esq., Law Office of Kimberly C. Cavanagh, Esq., Dover-Foxcroft, for appellant mother

Christopher D. Smith, Esq., Law Office of Christopher D. Smith, Esq., Dexter, for appellant father

Janet T. Mills, Attorney General and Meghan Szylvian Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Dover-Foxcroft District Court docket number PC-2013-21
FOR CLERK REFERENCE ONLY