MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 72
Docket:      Som-17-240
Argued:      December 13, 2017
Decided:     May 24, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, HJELM, and HUMPHREY, JJ.

MAUREEN D. DAVIS

v.

BENNIE C. MCGUIRE III

HJELM, J.

[¶1]  Maureen D. Davis appeals from a judgment of the District Court (Skowhegan,[1] *Stanfill, J.*) dismissing, for lack of standing, her complaint seeking to be determined a de facto parent of her grandson.  *See* 19-A M.R.S. § 1891(2) (2017).  Davis argues that the court erred by concluding after a contested hearing that she failed to establish that she has standing to proceed to a plenary hearing and that the court improperly held her to a greater standard than that to which an unrelated third party would be held.  We affirm the judgment.

---

[1]  In the captions of several orders issued in this matter, including the judgment, the court location is designated as Waterville rather than Skowhegan.  The case, however, was filed as, and remained, a Skowhegan proceeding.

## I. BACKGROUND

[¶2] The following facts are either undisputed or drawn from the court's findings of fact, all of which are supported by the record.[2] *See Thorndike v. Lisio*, 2017 ME 14, ¶ 2, 154 A.3d 624.

[¶3] Davis's daughter, Danielle, gave birth to a boy in December of 2007. Bennie C. McGuire III is the child's father. In 2008, Danielle filed a complaint to determine parental rights and responsibilities and child support. In 2009, by agreement of Danielle and McGuire, the District Court (Skowhegan, *Carlson, M.*) entered a judgment awarding Danielle sole parental rights and responsibilities, with no rights of contact to McGuire, and ordering McGuire to pay Danielle child support. Danielle died in early August of 2016.

[¶4] Davis has consistently been involved in the child's life. For example, the child frequently stayed overnight at Davis's home, where Davis provided the child with his own space and allowed him to keep belongings. The child's address for purposes of school and extracurricular activities, however, was Danielle's, and he refers to Davis as his grandmother. Further, before Danielle's

---

[2] After the court issued its judgment, which contained findings of fact, Davis filed a properly formulated motion for further findings and conclusions of law, *see* M.R. Civ. P. 52(b), which the court denied. With respect to facts in dispute, we therefore do not attribute findings to the court beyond those articulated in its judgment. *See Ehret v. Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101.

death Davis did not seek formal recognition as a parent to the child, and Danielle did not indicate informally that she regarded Davis as the child's parent.

[¶5]   Less than one week after Danielle died, Davis filed an ex parte petition in the Somerset County Probate Court seeking temporary guardianship of the child.  In her petition, Davis alleged that the child had resided both with her and with Danielle since his birth and that McGuire had not participated in the child's life during the past eight years other than a handful of visits with the child in Maine.  The court (*Washburn, J.*) granted Davis a six-month temporary guardianship of the child.

[¶6]  Upon learning of the order of temporary guardianship several days after it was issued, McGuire filed a petition to terminate the guardianship.  The Probate Court commenced a hearing on McGuire's petition, but before the hearing could be completed, Davis filed a complaint in the District Court in Skowhegan seeking an adjudication that she is a de facto parent of the child and an order establishing parental rights and responsibilities and child support.  McGuire filed an answer to Davis's complaint and a motion to dismiss for lack of standing.  Both Davis's complaint and McGuire's answer were accompanied by affidavits.  *See* 19-A M.R.S. §§ 1891(2)(A), (B).

[¶7]  Pursuant to the Home Court Act, *see* 4 M.R.S. § 152(5-A) (2017), the Probate Court case was transferred to the District Court in Skowhegan, which conducted a consolidated hearing (*Kelly, J.*) on Davis's guardianship petition and McGuire's petition to terminate the temporary guardianship.  While the hearing was ongoing, the parties reached an agreement for a temporary co-guardianship, which the court accepted and entered as an order that made Davis and McGuire the child's co-guardians until February of 2017 and provided that the child would move to Ohio with McGuire in late December of 2016.  The order stayed all deadlines in the de facto parenthood case and continued the case to February for either an uncontested hearing or a case management conference, specifically reserving the issue of standing.  The parties' agreement subsequently faltered, however, as was demonstrated in early December of 2016 when McGuire filed a motion for contempt, which the court ultimately denied after holding a hearing the following month.

[¶8]  With the resumption of proceedings on Davis's de facto parenthood complaint, the court (*Stanfill, J.*) issued a written order on standing.  In the order, the court stated that based on its review of the parties' affidavits filed with the complaint and the answer, it "has serious concerns whether Ms. Davis's role has historically been as a loving and involved grandparent or

as a de facto parent." For that reason, the court scheduled a hearing pursuant to section 1891(2)(C) for the court "to determine" whether Davis satisfied specified aspects of the standing framework.

[¶9] At the resulting hearing, held in March of 2017, both parties testified, and, by agreement, the record included transcripts from the earlier proceedings held in both the Probate Court and the District Court.[3] Later that month, the court entered a judgment dismissing Davis's de facto parenthood complaint for lack of standing. The order contained a number of findings of fact and reiterated that the purpose of the hearing was for the court "to determine those facts" that were controverted.

[¶10] In its judgment, the court addressed the separate statutory criteria that must be met for a party to establish de facto parenthood. *See* 19-A M.R.S. § 1891(3) (2017). *But see infra* n.7. The court found that Davis had presented prima facie evidence

> that she has engaged in consistent caretaking of [the child]; that there is a bonded and dependent relationship between Ms. Davis and [the child] that was fostered by [the child's] mother Danielle; that [Davis] accepts full and permanent responsibility of the child without expectation of financial compensation; and that the

---

[3] The court's consideration of evidence presented in a separate proceeding is permissible where the parties agree to that enhanced record. *See Cabral v. L'Heureux*, 2017 ME 50, ¶¶ 11 n.4, 12, 157 A.3d 795.

> continuing relationship between Ms. Davis and [the child] is in his best interest.

The court also found, however, that Davis did not present "prima facie evidence that [the child] resided with her for a significant period of time" or

> that Danielle understood, acknowledged or accepted that or behaved as though Ms. Davis was [the child's] parent as opposed to a loving, involved and supportive grandparent. . . . [A]lthough it appears that Danielle relied heavily on Ms. Davis for help with [the child], taking care of him after school, getting him to events, and the like, there is little evidence that Danielle saw Ms. Davis as a parent, with rights equal to hers, as opposed to a wonderful and important grandmother who provided consistent support and assistance.

The court further found that, given the child's bond with Davis, the child's separation from her would cause him "despair." Following from its finding that McGuire is a fit and competent parent, the court concluded that the best interest of the child by itself is nonetheless insufficient to confer standing on Davis.

[¶11] Because the court concluded that Davis failed to prove several elements necessary to establish her standing to proceed with the de facto parenthood claim, the court dismissed the complaint. Davis moved for additional findings and to amend the judgment. *See* M.R. Civ. P. 52, 59. The

court denied the motion, *see supra* n.2, and Davis timely appealed to us.  M.R. App. P. 2(b)(3) (Tower 2016).[4]

## II.  DISCUSSION

[¶12]  In this case, we consider for the first time the process required by the Maine Parentage Act (MPA), *see* 19-A M.R.S. §§ 1831-1939 (2017),[5] when a party seeks a court adjudication that he or she is a de facto parent.  The aspect of the judicial process at issue here is the determination of standing.  To consider Davis's challenges to the court's conclusion that she did not demonstrate her standing to proceed with the de facto parenthood complaint, we must first examine the standards of proof created by the MPA prescribing what Davis was required to show to establish standing.  Against those legal standards that we draw from the statute, we will then consider Davis's specific challenges.

A.     Standard of Proof to Establish Standing

[¶13]   Pursuant to the framework described both in our de facto parenthood decisions that predated the enactment of the MPA and now in the

---

[4] The restyled Maine Rules of Appellate Procedure do not apply because this appeal was filed before September 1, 2017.  *See* M.R. App. P. 1 (restyled Rules).

[5] The Maine Parentage Act (MPA) became effective July 1, 2016.  *See* P.L. 2015, ch. 296, §§ A-1, D-1.

8

MPA itself, a party who files a complaint to be adjudicated a de facto parent of a child must make an initial showing of standing that will determine whether the court will hold a plenary hearing on the ultimate question of whether that person is a de facto parent. *See* 19-A M.R.S. § 1891; *e.g.*, *Pitts v. Moore*, 2014 ME 59, ¶ 35, 90 A.3d 1169 (plurality opinion);[6] *Philbrook v. Theriault*, 2008 ME 152, ¶¶ 19-22, 957 A.2d 74. The requirement of a preliminary showing of standing is a function of the principle that a parent has a fundamental right to raise his or her child. *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion); *Rideout v. Riendeau*, 2000 ME 198, ¶ 18, 761 A.2d 291 ("[T]he right to *direct and control* a child's upbringing is a 'fundamental' liberty interest protected by the Due Process Clause.").

[¶14] By itself, a third party's assertion of de facto parenthood rights results in a disruption of the parent-child relationship because it "forc[es] a parent to expend time and resources defending against a third-party claim to a child [and] is itself an infringement on the fundamental right to parent." *Pitts*, 2014 ME 59, ¶ 35, 90 A.3d 1169; *see also Rideout*, 2000 ME 198, ¶ 30, 761 A.2d

---

[6] The nature of the showing necessary for a judicial determination of de facto parenthood was articulated in a plurality opinion in *Pitts v. Moore*, 2014 ME 59, 90 A.3d 1196. A majority of the Court, comprising those who joined the plurality and concurring opinions, *id.* ¶¶ 35, 42, took the view that standing must be established preliminarily to any adjudication of the de facto parenthood claim itself. That aspect of our opinion in *Pitts* is therefore authoritative.

291 (addressing the same effect of a third-party claim brought pursuant to the Grandparents Visitation Act, 19-A M.R.S. §§ 1801-1805 (2017)). Accordingly, to protect "against unwarranted intrusions into an intact family's life," *see Rideout*, 2000 ME 198, ¶ 30, 761 A.2d 291, we developed the requirement of standing that requires the petitioner to demonstrate an entitlement to proceed with the claim itself. That requirement is now codified in the MPA. *See* 19-A M.R.S. § 1891(2); L.D. 1017, Enacted Law Summary (127th Legis. 2015) (stating that the MPA "codifies the de facto parent doctrine, now firmly established by case law, to require an explicit determination of standing as a prerequisite for maintaining an action"); *see also infra* n.8.

[¶15] Pursuant to section 1891(2)(C) of the MPA, to demonstrate standing, the party claiming de facto parenthood must present "prima facie evidence" of the statutory elements that are necessary to ultimately establish the existence of a de facto parent relationship with the child.[7] That statute

---

[7] In our case law that preceded the 2017 enactment of the MPA, which contains the statutory authority governing de facto parenthood, we discussed what a petitioner is required to prove to be adjudicated as a de facto parent so that the state does not unconstitutionally intrude into the parent's fundamental relationship with his or her child. In those cases, we held that, in order to establish the compelling state interest needed to justify governmental interference with a parent-child relationship, the petitioner must prove the existence of "exceptional circumstances." *See, e.g.*, *Thorndike v. Lisio*, 2017 ME 14, ¶¶ 17, 19, 154 A.3d 624; *Kilborn v. Carey*, 2016 ME 78, ¶¶ 17, 22, 140 A.3d 461. In another case, a plurality opinion and a dissenting opinion each expressed the view that, for a de facto parenthood adjudication to be constitutional, the exceptional circumstance must be harm to the child in the absence of such an adjudication. *Pitts*, 2014 ME 59, ¶¶ 14-17, 29, 36, 61-65, 90 A.3d 1169.

prescribes a multi-step process for the determination of standing. 19-A M.R.S. § 1891. First, the claimant is required to file an affidavit along with the complaint, stating "specific facts" that track the elements of a de facto parenthood claim. *Id*. § 1891(2)(A). Next, the adverse party may file a responsive affidavit along with a responsive pleading. *Id.* § 1891(2)(B). Finally, the court is to review the parties' submissions and either make a determination based on the parties' submissions whether the claimant has demonstrated standing, or, "in its sole discretion, if necessary and on an expedited basis, hold a hearing to determine disputed facts that are necessary and material to the issue of standing." *Id.* § 1891(2)(C).

---

The *statutory* elements of proof of de facto parenthood found in 19-A M.R.S. § 1891(3) (2017), however, do not explicitly include these factors. *See, e.g.*, *Kilborn*, 2016 ME 78, ¶¶ 1 n.1, 25 n.7, 140 A.3d 461 (pointing out that the MPA's formulation of de facto parenthood does not require a showing of harm to the child). Our case law explained that an exceptional circumstance requires proof "that the child's life would be substantially and negatively affected if the person who has undertaken a permanent, unequivocal, committed, and responsible parental role in that child's life is removed from that role." *Id.* ¶ 22 (quotation marks omitted). Section 1891(3) describes the *relationship* between the putative de facto parent and the child in the same way, but omits any reference to the *effect* that the removal of that person from the child's life would have on the child.

This leaves the question of whether proof of the statutory elements alone is a constitutionally adequate foundation for a de facto parenthood determination, or whether a petitioner must prove something more than those statutory elements to make the statute constitutional as applied. We do not reach this question because, as the court correctly determined, Davis's submissions do not satisfy even the statutory criteria for standing, and so this case is not an occasion to consider whether, to be constitutionally applied, a petitioner for de facto parenthood must prove factors beyond those articulated in the statute.

[¶16] To consider the merits of Davis's contention on appeal that the court erred by concluding that she had not met her burden of proof to show standing, we must examine the *standards* of proof by which her evidence of standing must be assessed pursuant to the MPA. The issue arises because of the language in section 1891(2) that bears on the standard of proof that the claimant must satisfy in the standing analysis. As is noted above, section 1891(2)(C) provides that in making its standing determination based on the parties' affidavits and pleadings, the court decides whether the claimant has presented "prima facie evidence" of a de facto parenthood relationship with the child. If, however, the court exercises its discretion to hold a hearing on the question of standing, the court will "*determine* disputed facts." *Id.* § 1891(2)(C) (emphasis added). Because the Legislature has described the standards of proof in two different ways depending on the form of the evidence presented to the court, we must construe this aspect of the statute to determine if those standards are different in substance.

[¶17] The goal of statutory interpretation is to determine and give effect to the Legislature's intent. *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621. "Among the many sources we may consult to determine that legislative intent, we first determine if the language of the statute . . . is plain

and unambiguous." *Id*. When examining the plain language of a statute, we "tak[e] into account the subject matter and purposes of the statute, and the consequences of a particular interpretation," *id.* ¶ 21, with the objective to "avoid absurd, illogical or inconsistent results," *Wong v. Hawk*, 2012 ME 125, ¶ 8, 55 A.3d 425 (quotation marks omitted). "If the statutory language is ambiguous, meaning that it is reasonably susceptible to multiple interpretations, or is silent on a particular point, we will then consider other indicia of legislative intent including the purpose of the statute." *Griffin v. Griffin*, 2014 ME 70, ¶ 18, 92 A.3d 1144 (quotation marks omitted).

[¶18] Taken by itself, the Legislature's designation of the standard of proof that the court must apply at a contested evidentiary hearing is not ambiguous: the plain language of the statute's description of that standard is one of persuasion because the statute calls for the court to "determine"—i.e., find—the facts. 19-A M.R.S. § 1891(2)(C). There may be a latent ambiguity in this provision, however, because the standard of proof applicable to a standing determination conducted solely on the parties' written submissions is the presentation of "prima facie evidence." *Id*. In some contexts, this means meeting merely a burden of producing evidence that, *if* believed, would satisfy the greater burden of persuasion. *See, e.g., Camden Nat'l Bank v. Weintraub*,

2016 ME 101, ¶ 11, 143 A.3d 788 (stating that to make a "prima facie case" as required by the anti-SLAPP statute, *see* 14 M.R.S. § 556 (2017), the claimant must present "only some evidence on every element of proof necessary to obtain the desired remedy," without regard to the reliability or credibility of the evidence (quotation marks omitted)); *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 48 A.3d 774 (stating that to defeat a motion for summary judgment, a plaintiff must satisfy the "prima facie evidence standard [that]. . . requires proof only of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor"). The resulting question is whether in the MPA the Legislature intended to impose two different evidentiary standards when the court makes a determination of standing: the lesser standard of production when the court makes that determination based on the parties' written submissions, and the greater standard of persuasion when the court chooses to hold a contested hearing on that issue.

[¶19] For three reasons, we conclude that the single standard of proof that governs the court's determination of standing is that of persuasion, irrespective of whether the court adjudicates the issue based on the papers or on evidence presented at a hearing.

14

[¶20]  First, the statutory standard of a "prima facie" demonstration of standing echoes the language we articulated in de facto parenthood cases that predated the enactment of the MPA.  *See, e.g., Curtis v. Medeiros*, 2016 ME 180, ¶ 18, 152 A.3d 605; *Eaton v. Paradis*, 2014 ME 61, ¶ 8, 91 A.3d 590 (*quoting Philbrook*, 2008 ME 152, 957 A.2d 74); *Pitts*, 2014 ME 59, ¶ 35, 90 A.3d 1169; *Philbrook*, 2008 ME 152, ¶¶ 17, 19-22, 957 A.2d 74.  Given the legislative history of the MPA,[8] we use the common law that the MPA later attempted to codify as one way to understand the Legislature's intentions.  In none of those cases have we equated the standard of prima facie evidence with the mere burden of production.  In fact, we suggested the contrary.  For example, we stated that, when addressing a claim of standing, "the court must make a preliminary determination that [a de facto parenthood] relationship *does in fact exist* before a parent can be required to litigate the issue."  *Philbrook*, 2008 ME 152, ¶ 19, 957 A.2d 74 (emphasis added).  Proving that a fact *exists* requires more than

---

[8]  Although those cases predated and therefore were not governed by the MPA, which became effective on July 1, 2016, *see* 19-A M.R.S. § 1891 (2017), *enacted by* P.L. 2015, ch. 296, §§ A-1, D-1, our discussion in these cases regarding the procedure at the standing and plenary hearing stages is relevant to and aligned with 19-A M.R.S. § 1891.  Further, the legislative history of the MPA indicates that the de facto parentage section of the MPA is intended to codify the existing common law doctrines that "require an explicit determination of standing as a prerequisite for maintaining an action, [and] recognize the elevated burden of proof that a person claiming such status must satisfy . . . ."  *See* L.D. 1017, Enacted Law Summary (127th Legis. 2015); *see also* Family Law Advisory Commission, Report to Maine Legislature Joint Standing Committee on Judiciary Pursuant to Resolve 2014, c. 83 On Proposed "Maine Parentage Act" 4-5 (Dec. 2014).

simply proffering evidence that, *if believed*, would prove the point. Rather, proof of the existence of a fact requires satisfying the burden of persuasion.

[¶21] We have also explained that even when the court determines standing based on a review of affidavits, the question to be addressed by the court is whether the claimants "can meet their *burden of proof*." *See Davis v. Anderson*, 2008 ME 125, ¶ 17, 953 A.2d 1166 (emphasis added). The "burden of proof" ordinarily means the burden of persuasion. *See Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 272-76 (1994). And, in the analogous procedural context of the Grandparents Visitation Act, a petitioning grandparent must prove that "it is more likely than not"—i.e., shown by a preponderance of the evidence—that he or she has standing and is therefore entitled to proceed to the merits of a claim to establish visitation rights with a grandchild. 19-A M.R.S. § 1803(2)(C); *see also Rideout*, 2000 ME 198, ¶ 30, 761 A.2d 291 (explaining that "grandparents must demonstrate standing before they may litigate their [GVA] claim" by "*convinc[ing]* the court that they are among those grandparents who may pursue visits under the [GVA]" (emphasis added)). The level of proof that requires a party to *convince* the court of standing clearly exceeds merely presenting evidence of standing.

[¶22]  In light of these statements describing the quantum of proof necessary to demonstrate standing and the procedural phase where the court makes that determination, it is evident that "prima facie" as used in this statute is not a reference to the quantum of necessary proof but rather is merely a temporal indicator that the standing requirement is to be determined preliminarily to any ultimate adjudication of de facto parenthood.

[¶23]  Second, compared to a mere burden of production, the burden of persuasion is more consistent with the constitutional aspect of a de facto parenthood proceeding.  As is discussed above, a central purpose of requiring a de facto parenthood claimant to prove standing is to protect a parent from undue interference with his or her constitutional liberty interests arising from the parent-child relationship.  *See, e.g., Troxel,* 530 U.S. at 66; *Rideout*, 2000 ME 198, ¶ 18, 761 A.2d 291.  If a party claiming to be a de facto parent were entitled to a plenary hearing by merely proffering information, albeit in affidavit form, that correlated with the elements of a de facto parenthood claim, the legal parents could face excessive exposure to unwarranted and ultimately unsubstantiated interference with their constitutionally protected parenting interest.  Holding a party seeking de facto parenthood status to the burden of persuasion, regardless of the setting where the court determines standing, best

achieves the desired balance between the "parents' fundamental rights [and] the legitimate interests of third parties . . . asserting their status as de facto parents." *Eaton*, 2014 ME 61, ¶ 8, 91 A.3d 590.

[¶24] Third and finally, there is no principled reason why a standing determination should be subject to one standard of proof if the court makes that determination based on the pleadings and affidavits, and a greater standard of proof if the evidence is presented in a different way, namely, at a contested hearing. In either procedural setting, the question of standing presented to the court is, in the end, identical. As we have noted, pursuant to the plain terms of section 1891(2)(C), the standard of proof requires the claimant to present persuasive evidence of standing. Given that evidentiary standard applicable in a contested hearing held by the court in its discretion, the standard for an adjudication of standing without a court hearing should not be lower.

[¶25] For these reasons, a party seeking to be adjudicated as a de facto parent is subject to a preliminary burden to persuade the court of the party's standing, and not merely to produce evidence of standing.

[¶26] In this context, we note that we have not explicitly articulated the standard of proof applicable to the question of standing, although we have

made more general characterizations of that standard, as discussed above. *See supra* ¶ 19. For the reasons explained above, the claimant's evidence must be persuasive, meaning that the proof must be at least a preponderance.[9] *See Jacobs v. Jacobs*, 507 A.2d 596, 599 (Me. 1986) ("The standard of proof in a civil case between two private parties is ordinarily preponderance of the evidence, a rule that is departed from only in those rare circumstances where a higher standard of proof is clearly justified for constitutional or other significant policy reasons."). The standard governing a standing determination need not be greater than that, however, because at the plenary hearing a petitioner who already established standing must prove a de facto parent relationship by clear and convincing evidence—that is, to a *high* level of probability. *See* 19-A M.R.S. § 1891(3); *In re G.T.*, 2016 ME 2, ¶ 10, 130 A.3d 389; *Eaton*, 2014 ME 61, ¶ 9, 91 A.3d 590; *Pitts*, 2014 ME 59, ¶ 27, 90 A.3d 1169. To require a petitioner to prove at a preliminary hearing the same elements and to the same standard of proof that govern the plenary hearing would render the latter duplicative.

---

[9] Of course, when the court initially examines the parties' standing submissions on the papers and determines that there are contested facts, it need not hold a hearing on standing if, even assuming the petitioner's assertions are true, they could not or do not meet the preponderance standard.

[¶27]  Having identified the statutory requirements governing standing, we now consider Davis's assertion that the court erred by determining that she does not have standing to pursue her complaint for de facto parenthood.

B.    Davis's Standing

[¶28]  To establish standing pursuant to the MPA, *but see supra* n.7, a petitioner must prove each of the elements of a de facto parent relationship with the child by—as we now hold—a preponderance of the evidence.  The elements are as follows:

> A. The person has resided with the child for a significant period of time;
>
> B. The person has engaged in consistent caretaking of the child;
>
> C. A bonded and dependent relationship has been established between the child and the person, the relationship was fostered or supported by another parent of the child and the person and the other parent have understood, acknowledged or accepted that or behaved as though the person is a parent of the child;
>
> D. The person has accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation; and
>
> E. The continuing relationship between the person and the child is in the best interest of the child.

19-A M.R.S. § 1891(3)(A)-(E).  Because Davis had the burden of proof at the hearing on standing, *see id*. § 1891(2), she must establish on appeal that the

20

evidence compelled the court to find each of those five elements in her favor. *See id*. § 1891(3)(A)-(E); *Baillargeon v. Estate of Daigle*, 2010 ME 127, ¶ 20, 8 A.3d 709.

[¶29]  After reviewing the affidavits presented by Davis and McGuire, the court found that Davis had not presented prima facie evidence on several necessary statutory elements of a de facto parenthood case—that the child had resided with her for a significant period of time as required by section 1891(3)(A), and that Danielle understood, acknowledged or accepted that Davis had a parental relationship with the child or behaved as though the Davis was a parent of the child, as required in part of section 1891(3)(C).  The court then held a hearing on those criteria so that, on the basis of the parties' evidence, it could "determine" the facts in dispute.

[¶30]  The court issued its dispositive order on standing after the hearing.[10]  The court found that the child had never resided at Davis's home even though he stayed there frequently and had a space of his own and kept

---

[10]  Although the judgment made reference to "prima facie evidence," it is apparent that the court held Davis to the burden of persuasion, which, as we hold today, was correct.  In the order stating that a hearing would be held, the court explained that the purpose of the hearing was to allow the court "to determine" facts bearing on certain elements of a de facto parenthood case.  At the hearing itself, the court stated that its intent was to "make the determination as to standing."  And in the judgment issued following the hearing, the court made reference to the statutory provision that, at a hearing on standing, the court was to "determine" facts that bear on standing, *see* 19-A M.R.S. § 1891(2)(C).

some of his belongings there. Rather, the child resided at Danielle's home, which was separate from Davis's, and it was this address that was used for school purposes and extracurricular activities. The court also found that Danielle did not regard Davis as the child's parent with rights equal to hers. Although Davis consistently supported and assisted Danielle with raising the child, and Davis's relationship with this child differed from the relationships she has with her other grandchildren, the court did not err in its ultimate conclusion that Davis's relationship with the child was a grandparent-grandchild relationship and not that of a de facto parent.

[¶31] We have previously addressed the issue presented here—whether the court erred by dismissing a grandparent's de facto parenthood complaint for want of standing. *Philbrook*, 2008 ME 152, 957 A.2d 74. In that case, the petitioners, who were the children's maternal grandparents, had provided substantial care to the children when the children's mother lived in the grandparents' home with the children on and off for a period of years. *Id.* ¶¶ 2-13. In affirming the judgment dismissing the petition, we stated:

> We have never extended the de facto parent concept to include an individual who has not been understood to be the child's parent but who intermittently assumes parental duties at certain points of time in a child's life. Rather, when we have recognized a person as a de facto parent, we have done so in circumstances when

22

the individual was understood and acknowledged to be the child's parent both by the child and by the child's other parent.[11]

*Id.* ¶ 23. It is not enough that the grandparents had "provided needed care for the [children]," because "they were never thought to be the [children's] parents." *Id.* ¶ 26.

[¶32]  Here, the court found that Davis had a bonded and dependent relationship with the child and that Danielle fostered that relationship. The court found, however, that Danielle did not understand, acknowledge, or accept Davis as a parent even though Danielle accepted Davis's care for her son. The court correctly drew the proper distinction, which can be nuanced and subtle, between the role of a nurturing and involved caregiver and one who acts with and is recognized as being fully equivalent to a parent. *Cf. Kilborn v. Carey*, 2016 ME 78, ¶¶ 4-7, 19, 140 A.3d 461 (describing evidence that demonstrated the mother's intent that the putative de facto parent assume a parental role for the child). Here, the evidence did not compel the court to find that Danielle regarded Davis as a parent to the child.[12] As a result of this determination, the

---

[11] The MPA does not require *the child* to acknowledge the putative de facto parent as a parent. *See generally* 19-A M.R.S. § 1891(3). However, subsection 3 appears to be a codification of the principle that *the child's parent* must recognize the putative de facto parent as a parent.

[12] Davis argues that "[w]hile assuming a parental role completely certainly strengthens a claim for de facto parentage, the wording of the statute does not require this." In fact, section 1891(3)(C), the common law that it codifies, and the very term "de facto *parent*" require just that. *See* 19-A M.R.S. § 1891(3).

court was required to dismiss the complaint—as it did—because Davis did not have standing to proceed with her de facto parenthood claim.[13]

[¶33]  Finally, contrary to Davis's contention, dismissal of her complaint for lack of standing does not mean that a grandparent is held to a higher standard than the standard that applies to someone who is not a family member.  Proper application of the constitutionally based principles regulating de facto parenthood proceedings will require any person—regardless of whether there is a biological relationship to the child—to present exacting proof to be adjudicated a de facto parent and awarded parental rights to someone else's child.  *See* 19-A M.R.S. § 1891.  Here, Davis was found to lack standing not because she was held to a standard that is greater than would have been applied if she were not the child's grandparent, but rather because she failed to persuade the court that the child's mother acknowledged, accepted, or understood her as a parent to the child.

The entry is:

Judgment affirmed.

---

[13]  Because a petitioner's failure to satisfy *any* of the elements of standing is fatal to the petition itself, we need not and do not address the court's alternative conclusion that the child had not resided with Davis for a significant period.  *See* 19-A M.R.S. § 1891(2), (3) (setting out the elements to establish standing in the conjunctive).

Elissa J. Roberts, Esq. (orally), Schneider & Brewer, Waterville, for appellant Maureen D. Davis

Tiffany Bond, Esq. (orally), BondLaw, Portland, for appellee Bennie C. McGuire III

Skowhegan District Court docket number FM-2016-235
FOR CLERK REFERENCE ONLY