MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 2
Docket:      Aro-19-184
Argued:      November 6, 2019
Decided:     January 2, 2020

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

IN RE CHILD OF PHILIP S.[1]

SAUFLEY, C.J.

[¶1]  The paternal uncle and aunt of the child of Philip S. appeal from a judgment of the District Court (Caribou, *Soucy, J.*) dismissing for lack of standing their family matter complaint seeking a determination of de facto parentage. *See* 19-A M.R.S. § 1891 (2018).  They contend that the court erred in concluding, based on its findings of fact, that they lacked standing.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Because the uncle and aunt sought a determination of de facto parentage while a child protection matter was pending with respect to the child, we begin with the child protection history.  The facts are drawn from the

---

* Although Justice Hjelm participated in the appeal, he retired before this opinion was certified.

[1]  We ordered that this matter be treated as a child protection matter for purposes of naming the case because the petition for a determination of de facto parentage was filed after the child was removed from his uncle and aunt's home and placed with a non-kinship foster family during a child protection matter.

procedural record and from the court's supported findings of fact reached after an evidentiary hearing.

[¶3]  In the spring of 2015, when the child was less than six months old, he was first placed in the custody of the Department of Health and Human Services in a non-kinship foster placement.  As to the father, the court found jeopardy based on violence between the parents and the effects on the child of the father's substance abuse.  By mid-2016, the child was placed with his father, who was by then separated from the mother and residing with his supportive parents, and the case was closed.

[¶4]  The uncle and aunt moved to Maine in April and May 2016 when the child was transitioning back into his father's care.  The uncle and aunt are both licensed mental health treatment providers.  At first, they resided with the father and the child at the child's grandparents' home.  They moved into their own home after a couple of months, however, and in July, the father and the child moved in with them.  The uncle and aunt wanted to assist the father with his recovery and help him become independent.

[¶5]  Beginning in the fall of 2016, while the father was living with the uncle and aunt, he began to see the child's mother again.  The two fell back into fighting with each other and using drugs, and the father's mental health

suffered as he withdrew from family interaction and left the house for extended periods of time. The uncle and aunt increasingly provided care for the child when the father was absent. The father accepted their help, but he was resentful of what he perceived as an intrusion on his parenting of the child. The father had remained in contact with the non-kinship foster mother, with whom the child had been placed in 2015, and he repeatedly turned to her as a resource to care for the child overnight.

[¶6] In August 2017, while the child was with him, the father used drugs with the mother and a friend. Neither the father nor the child returned to the uncle and aunt's home that night. The following morning, the father—still intoxicated and in a desperate state—went to the police station with the child. He asked that the child be placed in the former foster mother's care if he were arrested.

[¶7] The Department opened a new child protection matter and placed the child in the uncle and aunt's home as a kinship placement, on the condition that the father not return to the household. The uncle and aunt provided care for the child until, in March 2018, they left the child with the father at the

4

grandparents' home without authorized supervision[2] and the child attempted to ingest some of the father's prescription medications. As a result of the uncle and aunt's continued failure to acknowledge that leaving the child with his father without supervision created a risk to the child, the Department removed the child from the uncle and aunt's care and placed him with the same foster parents who had cared for him during his previous removal from his parents' custody.

[¶8] In June 2018, the uncle and aunt moved to intervene in the child protection matter, for placement of the child with them, and to establish de facto parentage. One month later, they commenced the separate family matter complaint at issue here, seeking a determination of de facto parentage. They attached a joint affidavit summarizing their care for the child during his life.

[¶9] The Department objected to the motions filed in the child protection matter and moved to dismiss the family matter complaint based on a lack of standing, filing the affidavit of a Department caseworker. The court scheduled a trial in both matters, and the Department moved to consolidate the matters and to seal the family matter—a motion that the court later granted.

---

[2] It is unclear whether the grandmother was at home; the uncle did not check before leaving the child there with the father.

[¶10]  Over the course of four trial dates in October and December 2018, and January 2019, the court held the trial on de facto parentage standing and the motions pending in the child protection matter, including the issue of placement.

[¶11]  At the conclusion of the consolidated trial, the court granted the uncle and aunt's motion to intervene in the child protection matter, denied their motion for placement, and dismissed for a lack of standing their family matter complaint seeking to establish de facto parentage.  *See* 19-A M.R.S. § 1891(2). Analyzing the factors for establishing standing to assert de facto parentage in the family matter, *see id.* § 1891(2)(C), (3)(A)-(E), the court found that (A) the child had not resided with the uncle and aunt for a "significant period of time" in the circumstances of the case; (B) the uncle and aunt were not the child's consistent caregivers; (C) the child did not have a bonded and dependent relationship with them of a nature that the father ever accepted as parental; (D) the uncle and aunt had not intended to accept permanent responsibility for the child before the commencement of the child protection matter; and (E) changing the child's residence again to live with the uncle and aunt, who are increasingly in conflict with the Department, is not in the best interest of the child given his mental health needs.

[¶12] The uncle and aunt moved for findings of fact and conclusions of law, but the court declined to enter additional findings and clarified that it had reviewed the guardian ad litem's report recommending placement with the uncle and aunt but disagreed with that recommendation and retained placement with the non-kinship foster family.

[¶13] The uncle and aunt appealed in both matters. We entered an order in May 2019, directing the uncle and aunt to show cause why the child protection appeal should not be dismissed as interlocutory pursuant to 22 M.R.S. § 4006 (2018). The uncle and aunt voluntarily dismissed their appeal from the placement order in the child protection matter and now proceed only on the timely-filed appeal from the order on de facto parentage entered in the family matter. *See* 14 M.R.S. § 1901 (2018); 19-A M.R.S. § 104 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶14] Although we review de novo any legal issues related to standing to bring a de facto parentage action, we review the court's findings of fact for clear error. *See Young v. King*, 2019 ME 78, ¶ 7, 208 A.3d 762. Because the uncle and aunt had the burden of proof at the hearing on standing, *see* 19-A M.R.S. § 1891(2), they must establish on appeal that the evidence compelled the court

to find in their favor on each of the elements of standing. *Davis v. McGuire*, 2018 ME 72, ¶ 28, 186 A.3d 837; *see* 19-A M.R.S. § 1891(2)(C), (3)(A)-(E); *cf. Young*, 2019 ME 78, ¶ 8 n.2, 208 A.3d 762.

[¶15]   A party filing a complaint seeking an adjudication of de facto parentage pursuant to the Maine Parentage Act "must make an initial showing of standing that will determine whether the court will hold a plenary hearing on the ultimate question of whether that person is a de facto parent." *Young*, 2019 ME 78, ¶ 8, 208 A.3d 762 (quotation marks omitted).[3]   Procedurally, a three-step process is employed:

> First, the claimant is required to file an affidavit along with the complaint, stating "specific facts" that track the elements of a de facto parenthood claim. [19-A M.R.S.] § 1891(2)(A).   Next, the adverse party may file a responsive affidavit along with a responsive pleading. *Id.* § 1891(2)(B).   Finally, the court is to review the parties' submissions and either make a determination based on the parties' submissions whether the claimant has demonstrated standing, or, "in its sole discretion, if necessary and on an expedited basis, hold a hearing to determine disputed facts that are necessary and material to the issue of standing." *Id.* § 1891(2)(C).

*Davis*, 2018 ME 72, ¶ 15, 186 A.3d 837.

---

[3] The special standing requirement acknowledges that a parent defending against such litigation inherently suffers an intrusion on parental rights. *See Davis v. McGuire*, 2018 ME 72, ¶¶ 13-14, 186 A.3d 837; *Curtis v. Medeiros*, 2016 ME 180, ¶ 15, 152 A.3d 605.   Here, the parents did not file any materials in the family matter, though the custodian of the child—the Department of Health and Human Services—appeared and moved for the complaint's dismissal.

[¶16]   After receiving affidavits, the court here ordered a hearing on standing, at which the aunt and uncle had the burden to present persuasive evidence, "meaning that the proof must be by a preponderance," *Young*, 2019 ME 78, ¶ 8, 208 A.3d 762, of the following five elements:

> **A.** The person has resided with the child for a significant period of time;
>
> **B.** The person has engaged in consistent caretaking of the child;
>
> **C.** A bonded and dependent relationship has been established between the child and the person, the relationship was fostered or supported by another parent of the child and the person and the other parent have understood, acknowledged or accepted that or behaved as though the person is a parent of the child;
>
> **D.** The person has accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation; and
>
> **E.** The continuing relationship between the person and the child is in the best interest of the child.

19-A M.R.S. § 1891(3).[4]  The failure to establish any single element would have been fatal to their claim.  *See Davis*, 2018 ME 72, ¶ 28, 186 A.3d 837.  The court found that the uncle and aunt had failed to satisfy *any* of the elements.

---

[4]  There is an open question whether, in addition to establishing these factors, the complainant must establish "exceptional circumstances" to interfere with constitutionally protected parental rights.  *Young v. King*, 2019 ME 78, ¶ 8 n.2, 208 A.3d 762.  Establishing exceptional circumstances would require proof that "that child's life would be substantially and negatively affected if the person who has undertaken a permanent, unequivocal, committed, and responsible parental role in that child's life is removed from that role."  *Davis*, 2018 ME 72, ¶ 15 n.7, 186 A.3d 837 (quotation marks

[¶17] Before discussing each element, we note that the court did not reach the full merits of the de facto parentage claim. The elements that must be demonstrated to establish standing are identical to the elements that must be proved to obtain de facto parent status. *See* 19-A M.R.S. §§ 1891(2), (3); *Davis*, 2018 ME 72, ¶¶ 26-28, 186 A.3d 837; *but see supra* n.4. Because the court concluded that the uncle and aunt had not demonstrated the necessary factors by a preponderance of the evidence as required to obtain standing, *see* 19-A M.R.S. § 1891(2), it did not reach the question of whether they had proved each element by clear and convincing evidence, which would have been necessary for the uncle and aunt to prevail on the merits of their claim, *see id.* § 1891(3).

[¶18] When a full evidentiary hearing on the question of standing is planned, a court may, to conserve the parties' resources, combine the hearing on standing with the hearing on the merits, as long as the parties have notice of that plan. Thus, the court here could have, as the days of trial accumulated, ordered that the hearing would address the full merits of the de facto parentage claim. In so doing, the court could have avoided the potential for a second

---

omitted). Because we affirm the court's finding that statutory elements of standing have not been satisfied in this matter, we do not reach this issue for decision in this case.

hearing, on many of the same facts, had it determined that standing had been demonstrated by a preponderance of the evidence. *See id.*

[¶19] Nonetheless, the court did not err in conducting the trial here only on the issue of standing. It found that the uncle and aunt had not satisfied their burden to prove *any* of the elements by a preponderance of the evidence, *see id.* § 1891(2)(C), (3)(A)-(E); *Young*, 2019 ME 78, ¶ 8, 208 A.3d 762, and we review each of the court's findings for clear error.

A.    "The person has resided with the child for a significant period of time," 19-A M.R.S. § 1891(3)(A)

[¶20] With support in the record, the court found that the uncle and aunt had resided with the child for a period of about twenty-two months—from May 2016 to March 2018. The court concluded that this amount of time was not "significant" in the circumstances of the case. Given that seven of the months when the child shared a residence with the uncle and aunt were as a kinship placement during the child protection matter—a time when the goal was for the father to rehabilitate and reunify with the child—and given that the father was able to be responsible for the child during the early months of shared residence, the evidence does not compel a finding that the duration of shared residence met the "significant period of time" standard. *See* 19-A M.R.S. § 1891(3)(A).

B.      "The person has engaged in consistent caretaking of the child," 19-A M.R.S. § 1891(3)(B)

[¶21]  The court found that the father was—even in the uncle's and aunt's minds—the parental decisionmaker and caretaker during the time that he and the child resided with the uncle and aunt before the child protection matter began.  The court relied on evidence that many people—including the child's former foster mother and other paternal family members—were caring for the child to help the father and that the uncle and aunt were not consistently the people to provide care for the child.  These findings are consistent with the evidence, and the evidence does not compel a finding that the uncle and aunt were consistently the child's caregivers.  *See id.* § 1891(3)(B).

C.      "A bonded and dependent relationship has been established between the child and the person, the relationship was fostered or supported by another parent of the child and the person and the other parent have understood, acknowledged or accepted that or behaved as though the person is a parent of the child," 19-A M.R.S. § 1891(3)(C)

[¶22]  The court found that the child did not share a parent-child type of bond with the uncle and aunt; that the father did not foster and support such a parent-child relationship developing and even resented the uncle and aunt's intrusion into his parental prerogatives; and that the father never behaved as though the uncle and aunt were the child's parents, instead exercising his parental rights to ask that the child be placed with the non-kinship foster

mother when he brought the child to the police in August 2017. The court did not err in these findings, all of which were fully supported by the evidence. Again, the evidence does not compel a finding of a bonded and dependent parent-child type of relationship fostered or supported by the child's father. *See id.* § 1891(3)(C); *Davis*, 2018 ME 72, ¶¶ 32-33, 186 A.3d 837 (affirming dismissal for lack of standing when the grandparent did not establish that the parent had acknowledged or accepted the grandparent as a parent); *cf. Philbrook v. Theriault*, 2008 ME 152, ¶ 23, 957 A.2d 74 (holding, in applying the common law de facto parent standard before the Maine Parentage Act was enacted, that "an individual who has not been understood to be the child's parent but who intermittently assumes parental duties at certain points of time in a child's life" is not recognized as a de facto parent).

D.    "The person has accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation," 19-A M.R.S. § 1891(3)(D)

[¶23]  The court found that the uncle and aunt did not intend to accept permanent responsibility for the child until the child protection matter began, that they instead intended to help the father become capable of caring for the child on his own, that they explicitly agreed to facilitate the father's reunification with the child once they became a kinship placement, and that

they accepted some compensation from the Department for the child's care after the placement. The court did not err in its findings, and those supported findings do not compel a conclusion that the uncle and aunt accepted full and permanent parental responsibility for the child without the expectation of compensation. *See* 19-A M.R.S. § 1891(3)(D).

E.     "The continuing relationship between the person and the child is in the best interest of the child," 19-A M.R.S. § 1891(3)(E)

[¶24]  The court considered the evidence thoroughly in finding that the uncle and aunt had not shown that continuing the child's relationship with them was in the child's best interest. That finding is supported by competent evidence in the record that the court summarized in its decision—specifically:

- The child suffers from an attachment disorder and post-traumatic stress disorder arising from the many changes in where he was living, where he was going to day care, and who was responsible for him;

- The child has suffered trauma and continues to have difficulty sleeping; and

- Changing residences again would expose the child to further disruption, and the uncle and aunt seem unable to either accept the seriousness of the risks of changing the child's placement again or work with others to ameliorate those risks.

[¶25]  Taking all of the elements together, the facts found by the court do not compel a finding, by a preponderance of the evidence, that the uncle and aunt satisfied all necessary elements for establishing standing to seek de facto

parentage.  *See id.* § 1891(2)(C), (3)(A)-(E); *Davis*, 2018 ME 72, ¶ 28, 186 A.3d

837.  Accordingly, we affirm the judgment.

The entry is:

Judgment affirmed.

---

James M. Dunleavy, Esq. (orally), Currier, Trask & Dunleavy P.A., Presque Isle, for appellants paternal uncle and aunt

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Caribou District Court docket numbers PC-2017-9 and FM-2018-66
FOR CLERK REFERENCE ONLY