MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 101
Docket:        Kno-15-375
Argued:        April 6, 2016
Decided:       July 7, 2016

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

# CAMDEN NATIONAL BANK

v.

# ILENE F. WEINTRAUB et al.

HUMPHREY, J.

[¶1]    Camden National Bank appeals from the Superior Court's (Knox County, *Billings, J.*) denial of its special motion to dismiss Ilene Weintraub's counterclaim for intentional infliction of emotional distress. *See* 14 M.R.S. § 556 (2015).    On appeal, the Bank contends that the court erred in determining that section 556, Maine's "anti-SLAPP"[1] statute, prohibits selective dismissal of claims and in concluding that Weintraub met her burden of demonstrating a prima facie case of actual injury and causation.    We clarify that

---

[1]    "SLAPP" is an acronym for "Strategic Lawsuit Against Public Participation," and the statute is designed to protect against meritless lawsuits filed to dissuade or punish a party's exercise of its constitutional rights by imposing on it the delays and costs associated with litigation. *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842.    Maine's anti-SLAPP statute, 14 M.R.S. § 556 (2015), "permits defendants to file a special motion to dismiss civil claims against them that are based on the defendants' exercise of the constitutional right to petition." *Nader v. Me. Democratic Party* (*Nader II*), 2013 ME 51, ¶ 12, 66 A.3d 571 (per curiam).

2

the anti-SLAPP statute allows for dismissal of some but not all claims in a multi-count complaint, and we affirm the court's denial of the Bank's motion.

## I. BACKGROUND

[¶2]  The following facts, relevant to this appeal, are alleged in the parties' pleadings and are part of the motion record in this action.  *See Nader v. Me. Democratic Party* (*Nader II*), 2013 ME 51, ¶ 2, 66 A.3d 571 (per curiam).  Ilene Weintraub and her brother had two mortgage loans with the Bank, and, when they fell into arrears, Weintraub began receiving phone calls from the Bank's collections department.  Weintraub alleged that a particular collections specialist was verbally abusive and rude to her.  Another employee of the Bank attested in an affidavit that, during a phone call in August 2010, Weintraub stated that she "would like to murder" that collections specialist when the collections specialist calls.  Concerned for her coworker's safety, the employee called the Rockport Police Department and reported Weintraub's threat.  The police advised Weintraub that she was being investigated for criminal threatening, and they instructed her not to call the collections department but to conduct her banking business in person at a local branch, instead.

[¶3]  The Bank filed a complaint for foreclosure in July 2013,[2] and thereafter the parties engaged in the processes required by the foreclosure diversion program for nearly a year.  In March 2014, Weintraub filed an amended answer bringing several counterclaims against the Bank, including violations of the Maine Consumer Credit Code, breach of contract, and a claim for intentional infliction of emotional distress.  She alleged that, as a direct and proximate result of the abusive conduct of the collections department and the false accusation of criminal conduct, she suffered "physical and personal injuries" resulting in emotional distress and loss of enjoyment of life and requiring an increase of her diabetes medication.  In April of 2014, the Bank filed a motion to dismiss these counterclaims but, in that motion, it did not rely on Maine's anti-SLAPP statute as a ground for dismissal. The court denied that motion on December 1, 2014.

[¶4]  Three weeks later, the Bank filed a motion for leave to file a special motion to dismiss, coupled with a special motion to dismiss pursuant to 14 M.R.S. § 556.  The Bank argued in its special motion to dismiss that Maine's anti-SLAPP statute protects its right to make an accurate report to the police of matters of public safety without suffering the burden of a lawsuit, and that Weintraub's counterclaims were based on its exercise of petitioning rights.  *See Lynch v.*

---

[2]  Weintraub later sold the property and paid the remaining balance to the Bank, and the Bank dismissed its foreclosure action.

4

*Christie*, 815 F. Supp. 2d 341, 346 n.6 (D. Me. 2011) (stating that "reports to [law enforcement] . . . would clearly be covered [by the statute] as well"). Weintraub opposed the Bank's motion for leave to file on the ground that the special motion to dismiss was untimely.[3] After a hearing on several pending motions, Weintraub was granted leave to file amended counterclaims, and the Bank was granted leave to "reassert any pending motions," including, presumably, its special motion to dismiss. In its renewed special motion to dismiss, the Bank requested dismissal of Count II, violation of Maine Consumer Credit Code, Count III, intentional infliction of emotional distress, and Count IV, punitive damages flowing from the intentional infliction of emotional distress, on the basis that the conduct complained of constituted protected petitioning activity. The Bank did not request dismissal of Count I, breach of contract.

[¶5]  In July 2015, the court held a hearing on the Bank's motion. In its consideration of the special motion, which requested dismissal of only Counts II, III, and IV, the court stated that the anti-SLAPP statute did not allow for "selective dismissal of only certain claims." It reasoned that the language of the statute, "When a moving party asserts that <u>the</u> civil claims, counterclaims or cross claims

---

[3]  Title 14 M.R.S. § 556 provides: "The special motion to dismiss may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms the court determines proper." This motion was filed more than eight months after Weintraub filed her counterclaims. Weintraub filed an amended counterclaim on April 3, 2015, and the Bank filed a renewed special motion to dismiss on April 15, 2015.

against the moving party," was meant to guard against "meritless lawsuits," and therefore allowing a party to use a "special motion to summarily dispose of only some claims . . . would appear to further the 'abuse and tactical manipulation' with which anti-SLAPP litigation has become associated." The court denied the Bank's special motion "because it [did] not address all of Weintraub's claims as required for the statute to be applicable."

[¶6] The court also addressed the merits of the motion, however, and concluded that Weintraub's affidavit alleged physical injury and missed work due to the Bank's actions, which were more than just claims of mental suffering and embarrassment that were not sufficient in *Schelling v. Lindell*, 2008 ME 59, ¶ 18, 942 A.2d 1226. It found that Weintraub's claims were of a kind for which damages may be established without mere guess or conjecture; that the statute did not require expert medical testimony on causation at this point, as the Bank contended; and that Weintraub's "affidavit [made] a sufficient connection between [the Bank's] actions and her injuries to meet her burden of establishing a *prima facie* case of actual injury." The Bank timely appealed to us.

## II. DISCUSSION

A. Dismissal of Some But Not All Counts

[¶7] The Bank argues that the trial court erred when it held that "selective dismissal of only certain claims" was unavailable as a matter of law under Maine's

anti-SLAPP statute because the plain meaning of the statute indicates that it applies to *any* claims that seek to punish petitioning activity and does not require that *all* claims asserted in the complaint be directed at petitioning activity for the statute to apply. We review a trial court's ruling on a special motion to dismiss de novo. *See Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 8, 103 A.3d 547. We review the interpretation of a statute de novo as a question of law. *See Strout v. Cent. Me. Med. Ctr.*, 2014 ME 77, ¶ 10, 94 A.3d 786.

[¶8] We have adopted a two-step analysis for determining whether a special motion to dismiss should be granted.

> The first step requires the court to determine whether the moving party has demonstrated that the nonmoving party's claim is "based on the moving party's exercise of the right . . . of petition under the Constitution of the United States or the Constitution of Maine." If the moving party makes this initial showing, the burden then shifts to the nonmoving party, and under the second step the court must dismiss the nonmoving party's lawsuit or claim unless the non moving party makes a prima facie showing that at least one of the moving party's petitioning activities was "devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury to the [nonmoving party]."

*Town of Madawaska*, 2014 ME 121, ¶ 9, 103 A.3d 547 (alterations in original) (citations omitted); *see also* 14 M.R.S. § 556. The anti-SLAPP statute allows a defendant, at an early stage, to file a special motion to dismiss claims that deter, chill, or punish the free exercise of the First Amendment right to petition the

government through litigation directed at such activity. *Schelling*, 2008 ME 59, ¶¶ 6, 8, 942 A.2d 1226.

[¶9] "We have striven to interpret the anti-SLAPP statute in accordance with its plain language." *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 18, 41 A.3d 551. Section 556 allows a party to seek dismissal of "the civil claims, counterclaims or cross claims" that are based on that party's right to petition the government. The phrase "the civil claims, counterclaims or cross claims" does not include a modifier, i.e. "*all* civil claims, counterclaims or cross claims," and it does not use the term "civil action." A plain reading of the statute indicates that the language does not denote an "all or nothing" proposition; rather, discrete claims within a single action *may* be individually dismissed pursuant to a special motion to dismiss, and only the claims specifically based on the moving party's petitioning activity are properly considered for dismissal. We conclude that the trial court erred in holding that the anti-SLAPP statute did not allow for selective dismissal of some but not all of Weintraub's counterclaims. However, given that the court reached the merits of the Bank's special motion, the Bank cannot be said to have been prejudiced, thus the error was harmless. *See* M.R. Civ. P. 61; *Ireland v. Tardiff*, 2014 ME 153, ¶ 10 n.1, 107 A.3d 618.

8

## B.    Denial on the Merits

[¶10]   The Bank also argues that the court erred in concluding that Weintraub met her burden of proving "actual injury" and "causation" through prima facie evidence.  In the second step of the anti-SLAPP analysis, we review a court's determination that the nonmoving party met its prima facie burden of production de novo.  *See Nader II*, 2013 ME 51, ¶ 12 n.9, 66 A.3d 571 (per curiam).

[¶11]   Section 556 provides that the "court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law[4] and that the moving party's acts caused actual injury to the responding party."  As with all motions to dismiss, and pursuant to section 556, a court is permitted to infer that the allegations in the nonmoving party's pleading and factual statements in affidavits in its response to a special motion to dismiss are true.  14 M.R.S. § 556 (stating, "[in] making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the . . . defense is based"); *see Nader I*, 2012 ME 57, ¶¶ 16, 33,

---

[4]  In her affidavit, Weintraub alleged that she did not threaten to murder anyone, and that the Bank's statement to the police was a total fabrication.  As the court correctly determined, this was sufficient to establish, as a prima facie showing, that at least one of the moving party's petitioning activities was devoid of any reasonable factual support.

41 A.3d 551. The showing required by the statute is a prima facie case, and production of some evidence is enough to satisfy this burden. *Id.* ¶ 33. "Prima facie evidence requires only some evidence on every element of proof necessary to obtain the desired remedy. Thus, prima facie proof is a low standard that does not depend on the reliability or the credibility of evidence, all of which may be considered at some later time in the process." *Id.* ¶ 34 (quotation marks omitted).

1.    Actual Injury

[¶12]  "Like other matters of statutory interpretation, the meaning of the phrase 'actual injury' as used in 14 M.R.S. § 556 is a question of law entitled to de novo review." *Schelling*, 2008 ME 59, ¶ 17, 942 A.2d 1226. "We have interpreted the statutory requirement that the nonmoving party must demonstrate 'actual injury' to mean that 'the record must contain evidence from which damage in a definite amount may be determined with reasonable certainty. . . . [T]he facts in the record must allow the amount of damages to be determined with 'reasonable, as distinguished from mathematical certainty,' and have expressly stated that the amount cannot be left to 'mere guess or conjecture.'" *Id.* (citations omitted).

[¶13] Noting that the party opposing a special motion to dismiss must show a reasonably certain monetary valuation of the injury she has suffered, *see id.*, the Bank contends that Weintraub's affidavit is devoid of legally cognizable evidence showing any reasonably definite figure for monetary damages resulting from her

asserted harms. Weintraub stated in her affidavit that, as an immediate consequence of hearing the Bank's accusation and absorbing both its magnitude and utter falsity, her blood sugar numbers spiked dangerously; that blood chemistry changes gave her nausea, which in turn triggered such a violent cough that she could not work; and that she was able to resume work after a few weeks, but even with an increase in her insulin dosage, it took nearly a year before her blood sugar levels returned to where they were before she received the call from the Rockport Police Department. The court concluded that Weintraub's affidavit alleged physical injury and missed work due to the Bank's actions, which "is more than claims of mental suffering and embarrassment that [we] found are insufficient in *Schelling*."

[¶14] Contrary to the Bank's contention, and unlike in *Schelling*, Weintraub did not allege "purely emotional or psychic harm"—she alleged loss of work and the need for increased medication caused by the Bank's activity. *See Schelling*, 2008 ME 59, ¶¶ 20-21, 25-27, 942 A.2d 1226. Although the catalyst for her degraded condition was emotional distress, development of a "violent cough" and blood sugar "spike" are identifiable physical ailments or actual physical injuries, and not purely minor emotional injuries. *See id.; see also Lynch*, 815 F. Supp. 2d at 351. The statute does not require "an actuarial analysis of her damages," only an amount that is not "mere guess or conjecture." *Schelling*, 2008 ME 59, ¶¶ 17-18,

942 A.2d 1226 (quotation marks omitted). Given that it would be a simple matter to calculate the monetary loss of a few weeks of work[5] and the cost of an increase in insulin dosage, speculation about damages is not necessary. The court did not err in concluding that Weintraub met her prima facie burden of proving actual injury.

## 2. Causation

[¶15] The Bank also contends that the court erred in concluding that Weintraub met her burden to prove causation through prima facie evidence. Section 556 requires the nonmoving party to show that "the moving party's acts *caused* actual injury to the responding party" (emphasis added). Citing *Maravell v. R.J. Grondin & Sons*, 2007 ME 1, ¶ 11, 914 A.2d 709, the Bank argues, specifically, that causation of blood chemistry changes and each of the other medical conditions in the chain of alleged harms are matters "within the knowledge of experts only, and not within the common knowledge of lay[persons]." (Alteration in original.)

[¶16] As noted, the burden of a prima facie showing is met when there is a presentation of "some evidence on every element of proof necessary to obtain the

---

[5] An affidavit submitted by the collections specialist who spoke with Weintraub included the reproduction of an entry in Weintraub's "Loan History Record" in which Weintraub stated that she was working at Sweet Sensations [a local bakery/café] "part time only 10-12 hrs a week." As part of the record on the Bank's special motion to dismiss, this information would allow the court to estimate Weintraub's lost wages with even greater accuracy.

desired remedy." *Nader I*, 2012 ME 57, ¶ 34, 41 A.3d 551 (quotation marks omitted). Here, Weintraub alleged in her affidavit that the sudden stress of learning of the Bank's accusation caused the immediate consequence of dangerously spiking blood sugar levels, followed by nausea and a violent cough that prevented her from working. The court determined that Weintraub's affidavit made a sufficient connection between the Bank's actions and her injuries to meet her burden of establishing a prima facie case of actual injury. *Cf. Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 21, 45 A.3d 722 ("Temporal proximity of an employer's awareness of protected activity and the alleged retaliatory action may serve as the causal link for purposes of a prima facie case."). It also stated that it was unpersuaded that the statute requires expert medical testimony on causation at this point in the proceeding.

[¶17] The cases cited by the Bank in support of its contention that the allegations concerning causation in Weintraub's affidavit were conclusory, unsupported, entirely speculative, and insufficient to meet her burden because they involve complex medical facts that can only be established by a medical expert are inapposite.[6] Those cases involved flawed or incomplete expert testimony at trial

---

[6] The Bank cited *Merriam v. Wanger*, 2000 ME 159, 757 A.2d 778, and *Tolliver v. Dep't of Transp.*, 2008 ME 83, 948 A.2d 1223. In *Merriam*, the expert witnesses did not testify as to whether the defendant proximately caused the plaintiff's injuries, and thus, we held that *a jury* should not be allowed to infer complex medical facts without the aid of expert testimony. 2000 ME 159, ¶¶ 15-17, 757 A.2d 778.

that resulted in the jury deciding issues on which it had no reliable evidence. Here, in the context of the Bank's special motion to dismiss, no fact-finder is being asked to determine whether Weintraub's claim has been proven. We have never held, and do not hold here, that expert opinion is required to establish a prima facie case at this early stage in the proceedings. In this case, the trial court applied the proper standard—taking the nonmoving party's statements in its pleading and affidavits as true—to determine whether Weintraub met her burden. *See Nader I*, 2012 ME 57, ¶ 33, 41 A.3d 551. The court did not err in concluding that no expert testimony is required at this stage and that Weintraub met her burden of showing prima facie evidence of causation.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Daniel J. Murphy, Esq., Bernstein Shur, Portland, for appellant Camden National Bank

Alicia F. Curtis, Esq., Berman & Simmons, P.A., Lewiston, and J. Kimball Hobbs, Esq., Bar Mills, for appellees Ilene F. Weintraub and Paul A. Weintraub

---

*Tolliver* also involved a question concerning expert testimony during *a jury trial*. 2008 ME 83, ¶¶ 29-35, 948 A.2d 1223.

14

**At oral argument:**

Daniel J. Murphy, Esq., for appellant Camden National Bank

J. Kimball Hobbs, Esq., for appellee Ilene F. Weintraub et al.

Knox Superior Court docket number RE-2013-32
FOR CLERK REFERENCE ONLY