MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2020 ME 71
Docket:        Cum-19-392
Submitted
  On Briefs:   April 14, 2020
Decided:       May 19, 2020

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.
Majority:      MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.
Concurrence/
  Dissent:     JABAR, J.

TIMOTHY R. LIBBY

v.

KYLE ESTABROOK

HORTON, J.

[¶1] Timothy R. Libby appeals from a judgment of the District Court (Portland, *J. French, J.*) dismissing, for lack of standing, his petition to establish de facto parentage of his stepson, the biological child of Kyle Estabrook. Libby contends that the court abused its discretion in declining to hold an evidentiary hearing to determine disputed facts relevant to his standing. We vacate the judgment and remand for such a hearing.

## I. BACKGROUND

[¶2]  The following factual assertions are taken from Libby's affidavit in support of his petition and from the procedural record, except where otherwise indicated.  *See Young v. King*, 2019 ME 78, ¶ 2, 208 A.3d 762.

[¶3]  The child was nine years old when Libby filed his petition to establish de facto parentage.  Libby is the child's stepfather, and Estabrook is the child's biological father.  The child's mother died in March 2019.

[¶4]  Libby and the child's mother met and began dating in 2012, when the child was three years old.  Shortly thereafter, Libby moved in with the mother and the child, and the three "spent time together as a family."  While Libby was deployed to Afghanistan in 2013 and 2014, the mother and the child participated in events with Libby's family.  When Libby returned, he and the mother purchased a house together in Lewiston and eventually married in September 2017.  While living together, Libby and the mother shared responsibility for caring for the child.

[¶5]  According to Libby, Estabrook's contact with the child during this time was "sporadic and inconsistent," and he did not have "more frequent contact" with the child until 2017.

[¶6]  The child considers Libby's family to be his family, and he refers to Libby's family members as his "Pop-Pop," "Grandma," uncles, aunts, and cousins.  Likewise, Libby's family considers the child to be part of their family. Libby, the mother, and the child celebrated holidays and birthdays with Libby's family and attended all of the "Family Day" events held by Libby's National Guard unit.

[¶7]  The mother died unexpectedly in March 2019.  Estabrook took custody of the child after the mother's death.  Neither Libby nor the mother's family has seen the child since the mother's funeral.

[¶8]  In May 2019, Libby filed a petition to be adjudicated the child's de facto parent.  *See* 19-A M.R.S. § 1891 (2020).  With his petition, Libby included an affidavit alleging facts to support the existence of a de facto parent relationship with the child.  *See id.* § 1891(2)(A).

[¶9]  As permitted by statute, Estabrook filed his own affidavit, *see id.* § 1891(2)(B), and he requested that Libby's petition be dismissed. Estabrook's affidavit contravenes many of Libby's factual assertions and presents a very different picture of the parties' respective relationships with the child. Estabrook denies that he had only sporadic contact with his son before 2017; he instead asserts that the child consistently resided with him roughly half the

4

time. He also contends that Libby "often kept [the child] from me and isolated [the mother and the child] from their extended family, instead making them 'adopt' his family as their own." Finally, Estabrook rejects the notion that Libby has taken on a parental role, stating that the mother left Libby and lived with the child in a motel shortly before she died and that any relationship between Libby and the child is due solely to "the fact that [the child] spent half his time with [the mother]" while Libby and the mother were together.

[¶10] After reviewing the parties' affidavits, the court dismissed Libby's petition for lack of standing. In concluding that Libby was not entitled to a hearing to resolve disputed facts in the parties' affidavits, the court focused on one element of standing: whether the mother "understood, acknowledged or accepted that or behaved as though" Libby was a parent to the child. *Id.* § 1891(3)(C). In its decision, the court reasoned,

> [Libby] has not shown that [the mother] acknowledged his role as being anything other than a support system for her and [the child]. [Libby's] attestations, even taken as true, fail to establish that [the child's] parents understood, acknowledged, accepted, or behaved as though [Libby was the child's] parent.
>
> . . . .
>
> . . . While it appears that [Libby] has provided care to [the child], the court finds that he has done so as [the mother's] husband, not as a person who has fully and completely undertaken

a permanent, unequivocal, committed and responsible parental role in [the child's] life . . . .

(Footnote omitted) (quotation marks omitted). The court thus determined that Libby could not establish a necessary element of standing even if the facts in his affidavit were true.

[¶11] Libby thereafter filed a motion for reconsideration and for relief from the judgment. *See* M.R. Civ. P. 59(e), 60(b)(1), (3). With this motion, Libby attached affidavits from the child's maternal grandparents. The grandparents' affidavits contradict many of the statements in Estabrook's affidavit.[1] The court denied this motion, and Libby timely appealed. *See* 19-A M.R.S. § 104 (2020); M.R. App. P. 2B(c)(1).

---

[1] The parties sharply dispute whether the trial court can rely on a nonparty's affidavit in deciding whether the petitioner has established standing and whether we can rely on a nonparty's affidavit in resolving this appeal. We confine ourselves to the facts contained in Libby's and Estabrook's initial affidavits because we conclude that the court should have convened an evidentiary hearing to determine standing on the basis of those affidavits alone.

We take this opportunity to note that the plain language of the de facto parentage statute (1) requires the petitioner and any respondent each to file a single affidavit and (2) contains no provision authorizing third-party affidavits. *See* 19-A M.R.S. § 1891(2)(A)-(B) (2020). That said, section 1891 does not require the parties' affidavits to be made on personal knowledge. *Compare id.*, *with* M.R. Civ. P. 56(e) (requiring, in the context of a motion for summary judgment, that "[s]upporting and opposing affidavits . . . be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein"). Unlike a motion for summary judgment—which, if granted, is a substitute for a trial on the merits—the affidavits filed in a de facto parentage case concern the threshold issue of standing. Moreover, the affidavits in a de facto parentage proceeding are not necessarily a substitute for a hearing because the District Court has discretion to hold a hearing at which the parties would be required to prove the disputed facts contained in their affidavits by way of admissible evidence. *See* 19-A M.R.S. § 1891(2)(C) (2020). Therefore, it is appropriate for a party's affidavit to include facts about which third-party witnesses may be able to give admissible testimony.

## II. DISCUSSION

[¶12]   Title 19-A M.R.S. § 1891 allows a person to establish legal parentage of a child—and to obtain the rights of a legal parent—by a judicial decree acknowledging "the development of [a] parental relationship over time." *Stitham v. Henderson*, 2001 ME 52, ¶ 24, 768 A.2d 598 (Saufley, J., concurring); *see* 19-A M.R.S. § 1891(4)(B).

[¶13]   "[T]o protect against unwarranted intrusions into an intact family's life," *Davis v. McGuire*, 2018 ME 72, ¶ 14, 186 A.3d 837 (quotation marks omitted), a party who seeks to be adjudicated a de facto parent of a child "must make an initial showing of standing that will determine whether the court will hold a plenary hearing on the ultimate question of whether that person is a de facto parent," *id.* ¶ 13.  By statute, standing must be addressed pursuant to the following three-step process:

> First, the claimant is required to file an affidavit along with the complaint, stating specific facts that track the elements of a de facto parenthood claim.  Next, the adverse party may file a responsive affidavit along with a responsive pleading.  Finally, the court is to review the parties' submissions and either [determine] based on the parties' submissions whether the claimant has demonstrated standing, or, in its sole discretion, if necessary and on an expedited basis, hold a hearing to determine disputed facts that are necessary and material to the issue of standing.

*Id.* ¶ 15 (citations omitted) (quotation marks omitted); *see* 19-A M.R.S. § 1891(2).

[¶14]   The petitioner has the burden of establishing standing by a preponderance of the evidence, regardless of whether the court decides the issue on the affidavits or following an evidentiary hearing.   *See Davis*, 2018 ME 72, ¶¶ 13-26, 186 A.3d 837.  To prove standing, the petitioner must show the following:

> **A.** The person has resided with the child for a significant period of time;
>
> **B.** The person has engaged in consistent caretaking of the child;
>
> **C.** A bonded and dependent relationship has been established between the child and the person, the relationship was fostered or supported by another parent of the child and the person and the other party have understood, acknowledged or accepted that or behaved as though the person is a parent of the child;
>
> **D.** The person has accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation; and
>
> **E.** The continuing relationship between the person and the child is in the best interest of the child.[2]

19-A M.R.S. § 1891(2)(C), (3)(A)-(E).

---

2  There is an open question "whether proof of the statutory elements alone is a constitutionally adequate foundation for a de facto parenthood determination, or whether a petitioner must prove something more than those statutory elements to make the statute constitutional as applied." *Davis v. McGuire*, 2018 ME 72, ¶ 15 n.7, 186 A.3d 837.  We do not reach that issue in this case. *See Young v. King*, 2019 ME 78, ¶ 8 n.2, 208 A.3d 762.

[¶15]  When the trial court dismisses a de facto parentage petition for lack of standing without holding an evidentiary hearing, we review the court's decision not to hold a hearing for an abuse of discretion.  *See Young*, 2019 ME 78, ¶¶ 11-12, 208 A.3d 762.  The court abuses its discretion in declining to hold a hearing if (1) the facts in the petitioner's affidavit "could have led to a finding that [the petitioner] ha[s] standing" and (2) there are "material facts that the parties have disputed in their affidavits."  *Id.* ¶ 11.

[¶16]  We conclude that Libby's assertions, if believed, could have led to a finding that he has standing.  Most importantly, Libby avers that he and the mother essentially coparented the child for a majority of the child's life and that Estabrook's involvement with the child was "sporadic and inconsistent" for most of this time.  If true, these attestations could demonstrate that the mother understood that and behaved as though Libby occupied the parental vacuum that Libby says existed because of Estabrook's lack of engagement with the child for a significant period of the child's life.  *Cf. Kilborn v. Carey*, 2016 ME 78, ¶¶ 18-21, 140 A.3d 461 ("[T]here was ample evidence in the record to support the court's finding that [the petitioner's] parental role was unequivocal, despite

[the legal father's] peripheral presence [in the child's life] and objection to formal adoption . . . .").[3]

[¶17] Furthermore, Libby avers that (1) the child understands Libby's family to be his own family and (2) Libby, the mother, and the child have participated in family events with Libby's family and with Libby's National Guard unit. These assertions, if believed, also tend to show that the mother "understood, acknowledged or accepted that or behaved as though" Libby was a parent to the child. 19-A M.R.S. § 1891(3)(C); *see Young*, 2019 ME 78, ¶ 12, 208 A.3d 762 (explaining that this element of standing can be satisfied by evidence that the legal parent "allowed others in the community . . . to understand [the petitioner] to be the child's [parent]").

[¶18] Estabrook sharply disputes Libby's contentions. For example, he contends that (1) the child believes he is part of Libby's family only because Libby intentionally isolated the mother and the child from others, including the mother's family; (2) the mother left Libby and lived in a motel with the child shortly before she died; and (3) there was no vacant parental role for Libby to

---

[3] Title 19-A M.R.S. § 1891 (2020) was not effective at the time we issued our opinion in *Kilborn v. Carey*. *See* 2016 ME 78, ¶ 1 n.1, 140 A.3d 461. Although the standard we applied in *Kilborn* has now been superseded by section 1891, we have previously observed that this statute codifies the common law principle that a person cannot become a de facto parent unless the child's legal parent recognizes the person as a parent. *See Davis*, 2018 ME 72, ¶ 31 n.11, 186 A.3d 837.

fill because Estabrook has been consistently involved in the child's life. Therefore, the parties' affidavits contain disputed facts that are material to whether the mother "understood, acknowledged or accepted that or behaved as though" Libby was the child's parent. 19-A M.R.S. § 1891(3)(C).

[¶19] Because the facts in Libby's affidavit, if proved, could support a finding that he has standing and because Estabrook's affidavit generates disputed material facts that must be resolved to determine Libby's standing, the court went beyond its discretion in declining to convene an evidentiary hearing to resolve those factual disputes. *Compare Young*, 2019 ME 78, ¶¶ 11-13, 208 A.3d 762, *with Lamkin v. Lamkin*, 2018 ME 76, ¶¶ 26-27, 186 A.3d 1276 (affirming the dismissal of a petition for grandparent visitation and de facto parentage without a hearing where the petitioner "failed to present [in her affidavit] evidence of [several elements of standing]"). We remand for the court to conduct an evidentiary hearing on standing. If Libby establishes standing, then the court must determine, either at a consolidated or a separate hearing, whether Libby has proved the existence of a de facto parentage relationship by clear and convincing evidence.[4] *See* 19-A M.R.S. § 1891(2)(D).

---

[4] As we noted in *Young*, 2019 ME 78, ¶ 13 n.4, 208 A.3d 762, the court may consolidate a preliminary hearing on standing with a hearing on the merits "after consideration of (1) the relative complexity of the factual issues of standing and de facto parenthood; (2) the time and expense involved in conducting separate hearings on those subjects; and (3) the benefits and burdens upon

[¶20] Our decision in this case is a narrow one. We have observed that "parental rights disputes can be heavily factbound," *Young*, 2019 ME 78, ¶ 13, 208 A.3d 762, and our decision is based on the specific facts contained in the parties' affidavits. In particular, our decision in this case cannot be read for the proposition that any stepparent has standing to petition for de facto parentage based solely on the time spent with a child in the ordinary course of that person's marriage to the child's legal parent. Rather, a stepparent—like any other petitioner—has the burden to prove all the elements of standing, including that a legal parent of the child intended for the stepparent to assume a parental role, *see* 19-A M.R.S. § 1891(3)(C). In this case, Libby asserts that the mother intended for Libby to fill the fatherly role that Libby claims Estabrook had vacated by having limited involvement with the child for most of the child's life. This contention, combined with Libby's other averments and in light of

---

the parties—including the disruption, caused by the de facto parentage proceeding, of the legal parent's constitutionally protected relationship with the child—that would be presented by separate hearings as opposed to a single hearing that addresses both subjects." (Citation omitted.) In many de facto parentage cases, a single hearing will be less disruptive to the parent-child relationship and more efficient in terms of court and party resources.

Estabrook's denial of these facts, warranted a hearing to determine Libby's standing.[5]

The entry is:

> Judgment vacated. Remanded for an evidentiary hearing.

------

JABAR, J., concurring in part and dissenting in part.

[¶21] I concur with the Court's remanding the case to the trial court, but I do not agree that it is necessary for the trial court to conduct a hearing on the issue of standing. The record in this matter already establishes sufficient undisputed facts constituting prima facie evidence of standing that allow the court to reach the merits.

[¶22] The de facto parentage chapter of the Maine Parentage Act (MPA), 19-A M.R.S. §§ 1831-1939 (2020), sets out the procedure that a court must follow when a person seeks to be adjudicated a de facto parent. *See* 19-A M.R.S.

------

[5] In his brief, Libby also argues that the record compelled the court to find, based on the facts asserted in his affidavit, that he had established standing by a preponderance of the evidence. Because "material facts are contested" in the parties' affidavits, *Young*, 2019 ME 78, ¶ 13, 208 A.3d 762; *see supra* ¶¶ 16-18, we conclude that the record did not compel a finding that Libby has standing.

§ 1891. The procedure begins with a determination of standing pursuant to section 1891(2), which consists of a multi-step process.[6]

[¶23] First, the claimant must file an affidavit with the complaint seeking de facto parentage alleging under oath "specific facts" that track the elements of a de facto parent relationship. *Id.* § 1891(2)(A). Next, an adverse party may file a response to the putative de facto parent's pleading and affidavit. *Id.* § 1891(2)(B). Then, pursuant to section 1891(2)(C), the court must review the parties' submissions and determine whether the putative de facto parent has

---

[6] The Legislature has enacted the following process for a person to establish standing:

**A.** A person seeking to be adjudicated a de facto parent of a child shall file with the initial pleadings an affidavit alleging under oath specific facts to support the existence of a de facto parent relationship with the child as set forth in subsection 3. The pleadings and affidavit must be served upon all parents and legal guardians of the child and any other party to the proceeding.

**B.** An adverse party, parent or legal guardian who files a pleading in response to the pleadings in paragraph A shall also file an affidavit in response, serving all parties to the proceeding with a copy.

**C.** The court shall determine on the basis of the pleadings and affidavits under paragraphs A and B whether the person seeking to be adjudicated a de facto parent has presented prima facie evidence of the requirements set forth in subsection 3. The court may in its sole discretion, if necessary and on an expedited basis, hold a hearing to determine disputed facts that are necessary and material to the issue of standing.

**D.** If the court's determination under paragraph C is in the affirmative, the party claiming de facto parentage has standing to proceed to adjudication under subsection 3.

19-A M.R.S. § 1891(2) (2020).

14

presented prima facie evidence of the requirements set forth in section 1891(3)(A)-(E).[7]

[¶24] "Prima facie evidence requires only some evidence on every element of proof necessary to obtain the desired remedy [or judgment]." *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 11, 143 A.3d 788 (quotation marks omitted); *see Cookson v. State*, 2014 ME 24, ¶ 16, 86 A.3d 1186. "[P]rima facie proof is a low standard that does not depend on the reliability or the credibility of evidence, all of which may be considered at some later time in the process." *Weintraub*, 2016 ME 101, ¶ 11, 143 A.3d 788 (quotation marks omitted). Thus, "prima facie evidence" to establish standing requires only some

---

[7] Title 19-A M.R.S. § 1891(3) (2020) sets forth the requirement that

the person has fully and completely undertaken a permanent, unequivocal, committed and responsible parental role in the child's life. Such a finding requires a determination by the court that:

**A.** The person has resided with the child for a significant period of time;

**B.** The person has engaged in consistent caretaking of the child;

**C.** A bonded and dependent relationship has been established between the child and the person, the relationship was fostered or supported by another parent of the child and the person and the other parent have understood, acknowledged or accepted that or behaved as though the person is a parent of the child;

**D.** The person has accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation; and

**E.** The continuing relationship between the person and the child is in the best interest of the child.

evidence on each element of proof necessary to support the existence of a de facto parent relationship with the child as set forth in section 1891(3).

[¶25]  If the presented evidence is uncontested, then the court must accept the evidence as true and determine whether the uncontested evidence constitutes prima facie evidence of the statutory elements laid out in section 1891(3) of the MPA. *See* 19-A M.R.S. § 1891(2)(C); *see also Weintraub*, 2016 ME 101, ¶¶ 11-17, 143 A.3d 788; *Nader v. Me. Democratic Party*, 2012 ME 57, ¶¶ 33-35, 41 A.3d 551.  If there are competing affidavits, then the court must determine whether there are undisputed facts contained within the competing affidavits that constitute prima facie evidence of the required elements under section 1891(3). *See* 19-A M.R.S. § 1891(2)(C).  Where the undisputed facts are sufficient to constitute prima facie evidence, it will be unnecessary to hold a hearing to consider the disputed facts that are necessary and material to the issue of standing. *See id.*

[¶26]  Although the parties' affidavits do contain disputed facts, they also contain many undisputed facts concerning the relationship between Libby and the child.  The undisputed facts establish the following narrative.

[¶27]  Libby began living with child and his mother in October 2012, when the child was three years old.  Except for Libby's deployment to

Afghanistan from August 2013 until July 2014, Libby, the child, and the child's mother continued to live together as a family unit until 2019. In September 2014, Libby and the child's mother purchased their first home together. During the years that they lived together, Libby was responsible for at least half of the child's daycare pick-ups and drop-offs. Libby was responsible for waking the child in the morning, getting him dressed, and getting him to daycare. When the child entered primary school, Libby was actively involved in his schooling and participated in school events, including meet-and-greet events at the elementary school.

[¶28] Libby brought the child to his soccer, baseball, and basketball practices and games, and he would practice with the child in their backyard. During holidays, the child celebrated with Libby's family and referred to Libby's mother and father as "Grandma" and "Pop-Pop." He would call Libby's brothers and their wives his "uncles" and "aunts" and considered their children to be his cousins. He attended day camps with those cousins and Libby's mother. He would regularly attend Sunday dinners at Libby's parents' home.

[¶29] Libby continues to carry the child on his health insurance plan, as he has done since he began working at Bath Iron Works in 2015. The child attended all Family Days held by Libby's National Guard unit with his mother

and Libby. Ever since the child was three years old, Libby has accepted full and permanent responsibility as a parent of the child without any expectation of financial compensation. The child considers Libby to be one of his parents.

[¶30]  Notwithstanding the presence of disputed facts, the above narrative of undisputed facts constitutes sufficient prima facie evidence of all of the elements contained in section 1891(3). It is undisputed that Libby, the child, and the child's mother lived together as a family for the majority of the child's life and that Libby consistently cared for the child during that time. There is no dispute that a bonded and dependent relationship existed between Libby and the child. That relationship was fostered and supported by the child's mother, who "understood, acknowledged or accepted that or behaved as though [Libby] is a parent of the child," 19-A M.R.S. § 1891(3)(C), as evidenced by the undisputed facts that Libby carried the child on his health insurance; the child attended all family days at Libby's work; the child was included in Libby's family Christmas card photo; and the child referred to Libby's family members as his own grandparents, aunts, uncles, and cousins. It is also undisputed that the child considers Libby to be one of his parents. For these reasons, Libby has presented prima facie evidence to establish standing to bring a de facto parentage claim.

18

[¶31]  Standing is a preliminary hurdle that putative de facto parents must overcome to get their day in court.  Under the statute, a finding of standing in no way establishes those elements; it is simply a procedural mechanism to ensure that only legitimate cases of de facto parenthood proceed.  *See* 19-A M.R.S. § 1891.  After satisfying the standing requirement, the putative de facto parent still has the burden to prove, by clear and convincing evidence, the necessary elements under section 1891(3).

[¶32]  At this juncture of the case, the undisputed facts present a prima facie claim of de facto parentage.  There is no need for a hearing on this preliminary matter.  I would remand for a hearing on the merits of Libby's petition for de facto parentage.  *See* 19-A M.R.S. § 1891(3)-(4).

---

Sarah C. Mitchell, Esq., and Amy Dieterich, Esq., Skelton Taintor & Abbott, Auburn, for appellant Timothy R. Libby

Kim Pittman, Esq., and Suzanne E. Thompson, Esq., Vincent, Kantz, Pittman & Thompson, LLC, Portland, for appellee Kyle Estabrook

Portland District Court docket number FM-2019-395
FOR CLERK REFERENCE ONLY