MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 93
Docket:      Sag-19-260
Submitted
  On Briefs: May 4, 2020
Decided:     June 25, 2020

Panel:       MEAD, GORMAN, HUMPHREY, HORTON, and CONNORS, JJ.

MATTHEW POLLACK et al.

v.

JESSICA FOURNIER

PER CURIAM

[¶1] Matthew Pollack and Jane Quirion appeal from a judgment of the Superior Court (Sagadahoc County, *Billings, J.*) granting, in part, Jessica Fournier's special motion to dismiss Pollack and Quirion's amended complaint pursuant to Maine's Anti-SLAPP statute, 14 M.R.S. § 556 (2020), and authorizing an award of attorney fees to Fournier.[1] They challenge the court's authority to award attorney fees and the court's application of the anti-SLAPP statute to one count of their amended four-count complaint. We vacate the

---

[1] The court granted, in part, Fournier's special motion to dismiss pursuant to 14 M.R.S. § 556 (2020) on June 12, 2019. On that same day, the court also granted Fournier's separate motion to dismiss, *see* M.R. Civ. P. 12(b)(6), which disposed of *all* counts of Pollack and Quirion's amended complaint and constituted a final judgment. Because Pollack and Quirion challenge only the anti-SLAPP motion and its award of attorney fees, we do not disturb the court's separate judgment.

2

portion of the judgment granting the special motion to dismiss Count 1 of the amended complaint and otherwise affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts are drawn from the amended complaint, the affidavits filed in conjunction with Fournier's special motion to dismiss, and the procedural record.  *See Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 3, 202 A.3d 1189.

[¶3]  Pollack and Quirion have a child who was a student in a Regional School Unit.  Between August 2010 and June 2012, Fournier was the child's teacher.  On February 10, 2012, an incident occurred while the child was at school that resulted in the child acting "extremely distressed" at the end of the school day.

[¶4]  Pollack and Quirion believed that Fournier may have caused some "physical or psychological harm" to the child that resulted in the distressed behavior and, on February 27, 2012, submitted to the school a form requesting that Fournier be replaced as the child's teacher.  On March 5, 2012, Quirion reaffirmed the request to replace Fournier as the child's teacher and sent a letter to the school's principal challenging the school's lack of response to the earlier request.

[¶5]   On March 6, 2012, an attorney for the school wrote a letter to Quirion, asserting that Quirion's statements in her letter about Fournier were "defamation per se." On June 6, 2012, the school agreed to assign a new teacher to the child.

[¶6]   On August 3, 2012, Fournier served Pollack and Quirion with a notice of claim pursuant to 14 M.R.S. § 1602-B (2020), which allows for the accrual of prejudgment interest from the date of service of the notice of claim "until the date on which an order of judgment is entered," *id.* § 1602-B(5).  The notice asserted claims of defamation, negligent and intentional infliction of emotional distress, and interference with contractual relations, and stated that these claims arose from Pollack and Quirion's "threats, intimidation, interference, and defamation" of Fournier while she was employed as a teacher. The record does not show that Fournier ever filed a complaint after serving the notice of claim.[2]

[¶7]   In the present action, Pollack and Quirion filed a seven-count complaint against Fournier on July 27, 2018, in the Superior Court that included

---

[2] Although Fournier did not file a lawsuit against Pollack and Quirion, Fournier and some parents of students at the school sought, and served on Quirion, cease-harassment notices during 2014.  In connection with her special motion to dismiss, Fournier argued that these cease-harassment notices were protected petitioning activity, and Pollack and Quirion do not challenge on appeal the court's dismissal of their complaint as it relates to these cease-harassment notices.

4

three counts arising under federal law. On August 10, 2018, Fournier filed a notice of removal, and the case was removed to federal court.

[¶8] In federal court, Fournier filed a motion to dismiss the complaint on September 10, 2018. *See* Fed. R. Civ. P. 12(b)(6). On September 25, 2018, Pollack and Quirion amended their complaint to omit the three federal claims. As amended, their four-count complaint alleged (1) abuse of process in Fournier's service of the 2012 notice of claim, (2) wrongful use of civil proceedings by Fournier in "procuring" a harassment action by the parent of another student against Quirion, (3) wrongful use of a civil proceeding by Fournier in initiating her own harassment action against Quirion, and (4) a violation of the Maine Civil Rights Act, 5 M.R.S. § 4682 (2020). On October 8, 2018, Pollack and Quirion filed a motion to remand the case to state court. Fournier then filed a second motion to dismiss, as well as a special motion to dismiss pursuant to 14 M.R.S. § 556. The federal court (*Torresen, J.*) granted Pollack and Quirion's motion to remand the case to state court on January 16, 2019. *See Pollack v. Fournier*, 2019 U.S. Dist. LEXIS 7532 (D. Me. Jan. 16, 2019).

[¶9] Upon remand to the Superior Court, Fournier refiled her motion to dismiss and her special motion to dismiss. *See* 14 M.R.S. § 556; M.R. Civ. P. 12(b)(6). On June 12, 2019, the court (*Billings, J.*) granted Fournier's

special motion to dismiss as to two of the four counts in the amended complaint, concluding that her service of the notice of claim (Count 1) and her actions in seeking a harassment notice for herself (Count 3) were petitioning activity protected by the anti-SLAPP statute. *See* 14 M.R.S. § 556. As to Count 1, the portion of the complaint at issue in this appeal, the court concluded that "[i]t is reasonably likely that the Notice could eventually lead to consideration or review by a judicial body." Additionally, the court granted in part and denied in part Fournier's special motion as it related to the alleged violation of the Maine Civil Rights Act (Count 4), and denied her motion regarding the count alleging that Fournier "procured" a parent's harassment action against Quirion (Count 2). The court also authorized an award of costs and attorney fees to Fournier. Pollack and Quirion timely appealed. *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶10] Pollack and Quirion challenge (1) the court's dismissal, pursuant to 14 M.R.S. § 556, of Count 1 of their complaint regarding Fournier's service of the notice of claim and (2) the court's authority to award attorney fees to Fournier. We address each issue in turn.

6

A.      Service of Notice of Claim

[¶11]  Pollack and Quirion contend that Fournier's service of the notice of claim was not "reasonably likely to encourage" consideration by a judicial body, arguing that a court could not take action on the notice until a complaint was filed and that Fournier never served them with a summons or filed a complaint with the court.

[¶12]  We review the trial court's ultimate decision on an anti-SLAPP special motion to dismiss de novo. *Gaudette v. Davis*, 2017 ME 86, ¶ 18 n.8, 160 A.3d 1190; *see Nader v. Me. Democratic Party* (*Nader II*), 2013 ME 51, ¶ 12, 66 A.3d 571.  We also review de novo whether the claims asserted against the moving party are based on "petitioning activity."  *Gaudette*, 2017 ME 86, ¶ 16, 160 A.3d 1190.

[¶13]  "A Strategic Lawsuit Against Public Participation (SLAPP) refers to litigation instituted not to redress legitimate wrongs, but instead to dissuade or punish the defendant's First Amendment exercise of rights through the delay, distraction, and financial burden of defending the suit."  *Hearts with Haiti, Inc.*, 2019 ME 26, ¶ 9, 202 A.3d 1189 (quotation marks omitted).  Although Maine's anti-SLAPP statute, 14 M.R.S. § 556, "purports to provide a means for the swift dismissal of such lawsuits early in the litigation as a safeguard on the

defendant's First Amendment right to petition," *Gaudette*, 2017 ME 86, ¶ 4, 160 A.3d 1190, the application of section 556 "results in an inherent tension between the coexisting constitutional right to freedom of speech and the right to access the courts to seek redress for claimed injuries," *Hearts with Haiti, Inc.*, 2019 ME 26, ¶ 10, 202 A.3d 1189. Accordingly, when reviewing a special motion to dismiss pursuant to section 556, a trial court must apply the three-step procedure established in *Gaudette*, 2017 ME 86, ¶¶ 16-22, 160 A.3d 1190.

[¶14] At issue in this appeal is the first step in this process: whether Fournier, as the moving party, has "demonstrate[d], as a matter of law, that the anti-SLAPP statute applies to the conduct that is the subject of the plaintiff's complaint by establishing that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government." *Hearts with Haiti, Inc.*, 2019 ME 26, ¶ 11, 202 A.3d 1189 (quotation marks omitted). Further, "discrete claims within a single action may be individually dismissed pursuant to a special motion to dismiss, and only the claims specifically based on the moving party's petitioning activity are properly considered for dismissal." *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 9, 143 A.3d 788 (emphasis omitted). "If the defendant fails to meet [this] initial

8

burden, the special motion to dismiss must be denied." *Desjardins v. Reynolds*, 2017 ME 99, ¶ 8, 162 A.3d 228.

[¶15] "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives . . . . [It] is generally concerned with expression directed to the government seeking redress of a grievance." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). Section 556, in relevant part, defines a party's "exercise of its right of petition" as "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding."[3] 14 M.R.S. § 556 (quotation marks omitted). The statute's definition of petitioning activity "is informed by the First Amendment, and therefore, a petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to

---

[3] For purposes of the anti-SLAPP statute, "a party's exercise of its right of petition" is defined as

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556 (quotation marks omitted).

address those concerns." *Hearts with Haiti, Inc.*, 2019 ME 26, ¶ 12, 202 A.3d 1189 (quotation marks omitted).

[¶16]  Here, the petitioning activity asserted by Fournier in support of her special motion to dismiss included the service of the notice of claim on Pollack and Quirion in August 2012.  A notice of claim served pursuant to 14 M.R.S. § 1602-B allows for the accrual of prejudgment interest "from the time of notice of claim setting forth under oath the cause of action . . . until the date on which an order of judgment is entered."  14 M.R.S. § 1602-B(5).  In general, the assessment of prejudgment interest serves two purposes: "first, it compensates an injured party for the inability to use money rightfully belonging to that party between the date suit is filed and the date judgment is entered, and second, it encourages the defendant to conclude a pretrial settlement of clearly meritorious suits."  *Jasch v. Anchorage Inn*, 2002 ME 106, ¶ 13, 799 A.2d 1216 (citations omitted) (quotation marks omitted).  Thus, a notice of claim "represents a procedural device to control the conduct of the litigation by penalizing delay."  *Purwin v. Robertson Enters.*, 506 A.2d 1152, 1155 (Me. 1986).

[¶17] In this case, however, Fournier's service of the notice of claim could not "control the conduct of the litigation," *id.*, because Fournier did not

thereafter file a complaint. Even when considering section 556's "broad definition" of petitioning activity, *Desjardins*, 2017 ME 99, ¶ 18, 162 A.3d 228, a notice of claim for prejudgment interest cannot, by itself, "convey[] the special concerns of its author to the government" or "request[] action by the government to address those concerns," *Hearts with Haiti, Inc.*, 2019 ME 26, ¶ 12, 202 A.3d 1189 (quotation marks omitted). Here, the notice of claim was directed solely at Pollack and Quirion, not a governmental entity.

[¶18] Likewise, a notice of claim is not a "statement reasonably likely to encourage consideration or review of an issue by a . . . judicial body." 14 M.R.S. § 556. Although such a notice "could eventually lead to consideration or review by a judicial body," as the trial court concluded, this is not what section 556 requires. Rather, to be "a party's exercise of its right to petition," a party's statement must "*encourage* consideration or review of an issue by a . . . judicial body." *Id.* (emphasis added) (quotation marks omitted). When analyzing the plain meaning of the statute, as we must, *see Teele v. West-Harper*, 2017 ME 196, ¶ 10, 170 A.3d 803, the word "encourage" means "[to] help or stimulate (an activity, state, or view) to develop," *Encourage*, New Oxford American Dictionary (3d ed. 2010). Thus, just as a notice of claim cannot "convey[] the special concerns of its author to the government," *Hearts with Haiti, Inc.*,

2019 ME 26, ¶ 12, 202 A.3d 1189 (quotation marks omitted), when it is not accompanied by the subsequent filing of a complaint, a notice of claim cannot, by itself, "help or stimulate" the consideration of an issue by a judicial body.

[¶19]  Fournier's notice of claim is not petitioning activity as defined in Maine's Anti-SLAPP statute.  *See* 14 M.R.S. § 556; *Hearts with Haiti, Inc.*, 2019 ME 26, ¶¶ 13, 15, 202 A.3d 1189.  Accordingly, we vacate that portion of the court's judgment granting Fournier's special motion to dismiss Count 1 of Pollack and Quirion's amended complaint pursuant to Maine's Anti-SLAPP statute.

B.    Authorizing Award of Attorney Fees

[¶20]  We next address Pollack and Quirion's contention that the court erred in authorizing an award of attorney fees to Fournier.  They argue that the court did not have the authority to award attorney fees because the special motion was granted only "in part" and because Fournier did not provide any reasons to support an award of attorney fees.[4]

---

[4] Fournier has not yet filed an application for attorney fees and, thus, the court has not calculated an amount to be awarded.  *See* M.R. Civ. P. 54(b)(3).  We therefore address only the court's authority to award attorney fees when reviewing a special motion to dismiss and its determination, in the circumstances of this case, that an award of such fees is warranted.  *See* 14 M.R.S. § 556.

[¶21]  We review a court's authority to award attorney fees de novo, *see True v. Harmon*, 2015 ME 14, ¶ 7, 110 A.3d 650; *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1354 (Me. 1996) (stating that "the court's authority to award attorney fees is a matter of law"), and review a court's decision to award attorney fees for an abuse of discretion, *see Estate of Gagnon*, 2016 ME 129, ¶ 15, 147 A.3d 356.  "To the extent that interpretation of a statute is required in conjunction with the award or denial, we review the statutory construction de novo."  *Kilroy v. Northeast Sunspaces, Inc.*, 2007 ME 119, ¶ 6, 930 A.2d 1060.

[¶22]  A trial court's authority "to award attorney fees may be based on (1) a contractual agreement between the parties; (2) a specific statutory authorization; or (3) the court's inherent authority to sanction serious misconduct in a judicial proceeding."  *Sebra v. Wentworth*, 2010 ME 21, ¶ 17, 990 A.2d 538 (quotation marks omitted).  Section 556 provides that, "[i]f the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters."

[¶23]  Here, Fournier requested an award of attorney fees in her special motion to dismiss, the court had the statutory authority to authorize an award of attorney fees pursuant to section 556, and the court did so only after

granting, in part, Fournier's special motion to dismiss. Because "discrete claims within a single action may be individually dismissed pursuant to a special motion to dismiss," *Weintraub*, 2016 ME 101, ¶ 9, 143 A.3d 788 (emphasis omitted), we are not persuaded by Pollack and Quirion's contention that attorney fees may be awarded only when a court grants, in full, a special motion to dismiss. Therefore, the court did not err in determining that it could award attorney fees to Fournier. *See* 14 M.R.S. § 556; *Sweet v. Breivogel*, 2019 ME 18, ¶ 23, 201 A.3d 1215 ("[T]he trial court is in the best position to observe the unique nature and tenor of the litigation as it relates to a request for attorney fees . . . .").

[¶24] Having previously concluded that the court erred in determining that Fournier's service of the notice of claim (Count 1) was petitioning activity, an award of attorney fees as to that count is not authorized by section 556. However, the trial court did not expressly articulate whether its decision to award attorney fees was based in whole or in part on Count 1. Therefore, because the court was authorized to award attorney fees, and because the court did grant Fournier's special motion to dismiss as to Count 3 and, in part, as to Count 4, we remand for the court to decide whether an award of attorney fees is warranted as to the two remaining counts and, if so, to determine an

appropriate award of attorney fees in proportion to them.  *See Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 12, 847 A.2d 1169 (holding that a court may use the merit of a case "as a measure of whether attorney fees are appropriate . . . because the anti-SLAPP statute is aimed at preventing litigation that has no chance of succeeding on the merits").

The entry is:

> Judgment granting special motion to dismiss Count 1 of amended complaint vacated. Judgment affirmed in all other respects. Remanded for the court to determine attorney fees.

---

Matthew Pollack, appellant pro se

Jane Quirion, appellant pro se

Daniel A. Nuzzi, Esq., and Nathaniel A. Bessey, Esq., Brann & Isaacson, Lewiston, for appellee Jessica Fournier

Sagadahoc County Superior Court docket number CV-2018-24